0106

Thomas R. and Lynn L. MORGAN, Respondents, v. SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES and Rebecca W. and Robert Wardlaw, Appellants. In The Interest of Krystie OWENS.

(313 S. E. (2d) 350)

Court of Appeals

*Ethel E. Weinberg,* Columbia, *Jane A. McFaddin,* Charleston, *for appellants.*

*Randall M. Chastain,* Columbia, *for respondents.*

March 2, 1984.

SHAW, Judge:

Both appellants, South Carolina Department of Social Services and Mr. and Mrs. Wardlaw, are appealing a Family Court order allowing the respondents (Mr. and Mrs. Morgan) to adopt the minor, Krystie Owens. We affirm.

In an equity action tried by a judge without a reference the Supreme Court (also Appeals Court) has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

The primary issue is whether the Department of Social Services (DSS) holding temporary custody of a minor that is free for adoption must consent before the Family Court issues its order granting an adoption.

Krystie Owens is the oldest of three children. The two younger children are Krystie's half brothers. None of Krystie's parents (she has a legal and a natural father) have ever shown any interest in her or her brothers. Krystie's mother signed a Consent and Waiver form whereby she relinquished all parental rights in Krystie and consented to Krystie's adoption by the parents recommended by DSS. DSS has been unsuccessful in contacting or serving the natural or

legal father of the children who are believed to be out of the state.

DSS placed Krystie temporarily with the Morgans as foster parents on August 29, 1980. The Morgans signed a foster parent contract which provided that DSS could reclaim Krystie upon ten days notice and that the Morgans agreed to follow DSS adoption procedures and policies should they later desire to adopt Krystie. On October 24, 1980, the Morgans communicated to DSS their desire to adopt Krystie.

By this time, DSS had selected the Wardlaws as the proper adoptive parents and had placed Krystie's brothers with them. Even though it is DSS policy to keep siblings together if at all possible, DSS agreed to conduct a psychological examination of Krystie to determine if it would be in her best interest to stay with the Morgans. On December 21, 1980, it was determined that there was no reason why Krystie could not live with her brothers. On December 22, the ten days notice of removal was given to the Morgans.

The Morgans brought suit seeking a temporary restraining order which was granted on January 8, 1981. The Morgans' case was joined with DSS' case to terminate the fathers' parental rights on the ground of abandonment. The cases were heard together and the Morgans were allowed to adopt Krystie on the grounds that it was in Krystie's best interest to remain with the Morgans and that DSS had engaged in misconduct by adhering strictly to agency policy rather than considering Krystie's best interest. The fees for Krystie's court appointed attorney, $600, and guardian ad litem, $800, were split between the Morgans and DSS.

It is DSS' position that the Morgans' adoption of Krystie is not valid because DSS never consented to the adoption. DSS claims that is acquired custody of Krystie when the court terminated the fathers' parental rights on the ground of abandonment under Section 20-7-1590 and when Krystie's mother relinquished the child for adoption to DSS under Section 20-7-1710(d). Because DSS has custody, it claims that its consent is necessary for an adoption to occur. DSS relies on the case of *Akers v. Hard*, 275 S. C. 100, 267 S. E. (2d) 536 (1980), which states in a footnote:

> Adoptions in South Carolina are purely statutory; the
> process by which an adoption takes place is determined

by the General Assembly. When an agency acquires custody of a child with the right to consent to adoption, statutory law provides that there can be no adoption without the consent. *Akers*, 267 S. E. (2d) at 537, footnote 1.

DSS has misread Section 20-7-1710(d) which states:

An adoption of a child may be decreed when there have been filed written consents to adoption executed by: (d) the executive head of an agency if both parents are dead *or* if the child has been relinquished for adoption to such agency *or* if the rights of the parents have been judicially terminated *and* custody of the child had been legally vested in such agency with authority to consent to adoption of the child. (emphasis added).

This statute sets up three conditions under which the consent of the executive head of an agency is required before an adoption may be decreed — the death of both parents, the relinquishment of the child to the agency for adoption, and the judicial termination of parental rights. DSS reads the statute so that the conjunctive word "and" with its following phrase only applies to the judicial termination of parental rights and not to the other two conditions. This reading of 20-7-1710(d) goes against the common and ordinary meaning given to the words of the English language. In construing a statute, the words used should be given their ordinary and popular significance. *Martin v. Nationwide Mut. Ins. Co.,* 256 S. C. 577, 183 S. E. (2d) 451 (1971); *Hay v. S. C. Tax Commission,* 273 S. C. 269, 255 S. E. (2d) 837 (1979).

Section 20-7-1710(d) sets forth the three conditions when the consent of an agency head may be required by the use of the disjunctive words "or," with no commas or semi-colons, and then follows the three conditions with the phrase "and custody of the child had been legally vested in such agency with authority to consent to adoption of the child." We read the statute to mean that the occurrence of one of these three events in and of itself is not sufficient to require agency consent; one or more of these conditions must occur *and* custody of the child must have been legally vested in the agency with authority to consent to the adoption. To hold otherwise would create the situation whereby upon the deaths

of both parents, the first state agency to gain possession of the decedents' children would have the power to consent to the children's adoption without judicial review.

That 20-7-1710(d) requires the occurrence of one of the three conditions and the legal vesting of authority to consent to the adoption is clear and unambiguous from the terms of the statute. The legislative design is unmistakable. In such a situation, there is no room for construction and the courts are required to apply the statute literally. *Green v. Zimmerman*, 269 S. C. 535, 238 S. E. (2d) 323 (1977); *Martin v. Ellisor*, 266 S. C. 377, 223 S. E. (2d) 415 (1976); *Mitchell v. Mitchell*, 266 S. C. 196, 222 S. E. (2d) 499 (1976); *McMillen Feed v. Mayer*, 265 S. C. 500, 220 S. E. (2d) 221 (1975).

In *Ex Parte Tillman*, 84 S. C. 552, 66 S. E. 1049 (1910), our Supreme Court held that the determination of the right to custody of a minor child is a judicial question. The legislature is denied the power to exercise this judicial function or to confer upon any other person the right to exercise it. Any statute authorizing the conveyance of a minor child without permitting judicial investigation is violative of the separation of powers clause.

The case of *State ex rel. Portgage County Welfare Dept. v. Summers*, 38 Ohio St. (2d) 144, 311 N. E. (2d) 6 (1974), presented the Ohio Supreme Court with a situation identical to the instant one — a state agency claimed that a statute required the Ohio courts to get the agency's consent before the courts could place a child for adoption. The Ohio Supreme Court held that the refusal to consent to an adoption by a state agency does not impair the jurisdiction of the courts over adoptions. A statute may not operate to divest the courts of their necessary judicial powers to fully hear and determine an adoption proceeding. To hold otherwise would leave the fate of the adoptive child to agency whim and caprice without having the agency's reasons for withholding consent adjudicated. The recommendations and reports of the agency are to be considered by the courts, in conjunction with all other evidence adduced in the adoption proceeding, in deciding whether the foster parents are suitably qualified to adopt and what is in the best interest of the child.

Here, after DSS commenced a neglect and abuse action against both of Krystie's parents, the mother by a consent and

waiver agreement relinquished all her rights to Krystie to DSS and consented to Krystie's adoption. DSS then brought this action to have the father's parental rights terminated; for permanent custody of the minor (for purposes of placement and adoption); and for court ratification of the consent and waiver agreement.

The trial court terminated the father's parental rights, but refused to ratify the consent and waiver agreement finding it in the child's best interest not to do so. The court also found that the mother had in fact abandoned her child and terminated her parental rights. The court then permitted the Morgans to adopt Krystie. In so doing, the court refused to grant legal custody to DSS with the right to consent to an adoption.

Clearly, Section 20-7-1710, Code 1976, contemplates that the agency or person having legal custody of a child, otherwise free for adoption, shall consent to the adoption. However, where, as here, DSS was never granted *legal* custody of Krystie subsequent to her being "freed" for adoption, the statutory requirement of consent in Section 20-7-1710(d) is inapplicable.

DSS next claims that because Krystie was not served personally with a summons and petition, the court was without jurisdiction and its actions were null. See Sections 15-9-480 and 20-7-1690. Section 15-9-480 requires personal service in suits "against a minor under the age of fourteen years." Under Section 20-7-1670(a), both the Morgans and the Wardlaws had standing to file adoption petitions. Krystie, through her guardian ad litem, filed an answer to those petitions asking that the court assume jurisdiction over the adoption. DSS failed to prove that Krystie wasn't served. *Rainwater Furniture v. Blanton*, 246 S. C. 172, 143 S. E. (2d) 124 (1965). Further, DSS voluntarily placed itself under the court's jurisdiction, agreed that the court should determine the ultimate issue of the adoption of Krystie, and cannot be now heard to complain about the court's jurisdiction. *Stephens v. Ringling*, 102 S. C. 333, 86 S. E. 683 (1915).

The Family Court determined that it would be in the best interest of Krystie to stay with the Morgans. This decision was made after a lengthy trial in which all concerned parties and several experts testified. We feel a clear preponderance of the evidence shows that the trial judge

acted in Krystie's best interest by allowing her to stay with the Morgans. The Morgans will be equally good parents to Krystie as the Wardlaws will be to Krystie's brothers. While this court recognizes the importance of keeping siblings together if possible, Krystie's problems in the past might recur should she be moved again. Prior to being placed with the Morgans, Krystie's life had been one of intermittent stays with her natural mother followed by bureaucratic shuffling between various foster homes. These episodes of constant movement have had a nightmarish effect on Krystie manifested by terrorized screaming during the night and other abnormal behavior. Krystie now sleeps soundly and without fear with the Morgans. She is in excellent hands and a loving, caring home; the parent/child bond is present. Removing Krystie from the Morgans would cause a substantial risk to the level of normality that she has achieved. This risk is much greater than any damage that could result from not growing up with her siblings.

The welfare and best interest of the minor child is the paramount consideration in all proceedings involving the adoption of children; the interest of the child stands higher than that of the state or the parties seeking to adopt. *Galloway v. Galloway*, 249 S. C. 157, 153 S. E. (2d) 326 (1967).

After considering the voluminous testimony involved in this case, the trial judge stated that "the one fact not subject to dispute is that the child for the first time in her life found security and happiness with Dr. and Mrs. Morgan."

Affirmed.

BELL and CURETON, JJ., concur.