665 S.E.2d 237

Cody Steven POWELL, by and through his Conservator,
Kelly H. KELLEY, and his natural and legal
guardian, Elizabeth Powell, Respondent,

v.

BANK OF AMERICA, Karen P. Unrue,
and Travis Powell, Defendants,

and

Elizabeth Powell, Defendant/Intervenor,

of whom Bank of America is the, Appellant/Respondent,

and

Elizabeth Powell is the, Respondent/Appellant.

No. 4415.

Court of Appeals of South Carolina.

Heard May 6, 2008.
Decided June 20, 2008.

438

Clarence Davis and T. William McGee, III, both of Columbia, for Appellant–Respondent.

Jennifer R. Kellahan, W.E. Jenkinson, III, and Ronnie Alan Sabb, all of Kingstree, for Respondent.

Helen Tyler McFadden, of Kingstree, for Respondent–Appellant.

Harry C. Wilson, Jr., of Sumter, for Defendant Travis Powell.

KITTREDGE, J.:

We are presented with cross-appeals arising from an order apportioning interpleaded funds in a severed equitable action. The appeal of the Bank of America (the Bank) is dismissed because it has no legal interest in the interpleaded funds and is not an aggrieved party in the severed equitable action. Because the Bank's appeal is dismissed, we decline to address the remaining issues.

## I.

On November 19, 2000, Steven Powell died in a work-related accident, leaving behind his wife, Elizabeth, and a minor son, Cody. Elizabeth received life insurance proceeds for herself and Cody from three separate policies.

In February 2001, Steven's sister, Karen Powell (now Karen P. Unrue), approached Elizabeth about managing these funds. At the time, Karen was the owner of an accounting business, Carolina Bookkeeping, and held herself out as knowledgeable regarding investments. Karen told Elizabeth that the investment firm of Charles Schwab, where Elizabeth had already invested a portion of the funds, would cheat her out of her money. Ultimately, Elizabeth began to rely on Karen for investment advice, and between February 21 and May 1 of 2001, Elizabeth transferred $274,191 to Karen for investment.

In a March 29, 2001 order of the probate court of Williamsburg County, Karen and her brother, Travis Powell, were appointed co-conservators for the estate of Cody. Under the probate court order, the funds were to be deposited in a restricted account, and no funds were to be withdrawn or transferred without written order of the probate court. The probate court also prohibited Karen and Travis from compensating themselves out of Cody's funds.

Cody's funds were never placed in a restricted account. Karen deposited Cody's funds into her checking account at the Bank, and subsequently placed them into certificates of deposit (CDs) with the Bank in her name. As each CD matured, the money was re-deposited into Karen's personal checking account, and by September 2001, all of the funds had been withdrawn from the CDs and placed into Karen's personal account.

Karen and her husband moved to Colorado in 2001. By the end of November 2001, Karen had removed $355,000 from her checking account at the Bank and deposited the funds in an account with Vectra Bank in Colorado in the names of Karen, Travis, and Elizabeth. Elizabeth was unaware of this account. While in Colorado, Karen withdrew the funds for her own personal use. On several occasions, Elizabeth contacted Karen through a phone booth in Colorado requesting an accounting of the funds. While Karen did make several small payments at the request of Elizabeth, Karen failed to provide an accounting of the funds or to return the funds to Cody and Elizabeth.

On May 30, 2002, Elizabeth filed a complaint against Karen for conversion of the funds. The same day, Karen forwarded

a check in the amount of \$194,637.97 drawn from the account at Vectra Bank to a South Carolina attorney, who placed the funds in escrow. In June 2004, Elizabeth secured a judgment in her action against Karen in the amount of \$249,733.39 actual damages and \$750,000 punitive damages.

On May 2, 2003, Cody, through his conservator, Kelly H. Kelley, and his mother, Elizabeth, filed suit against the Bank, Travis, and Karen to recover his funds. The Bank and Travis appeared and filed answers denying liability. Karen, however, did not respond and was held in default.

By consent order filed November 21, 2003, the parties in Cody's action agreed for all funds in the escrow account to be deposited in an interest-bearing account with the clerk of court for Williamsburg County. Subsequently, on June 16, 2004, Elizabeth joined the case as a defendant-intervenor pursuant to Rule 24(a)(2), SCRCP.

Judge Howard P. King issued a scheduling order in Cody's case on December 30, 2004, which set March 1, 2005, as the deadline for completion of discovery. Subsequent to the discovery deadline, the Bank filed a motion to sever Elizabeth's equitable action pursuant to Rule 42, SCRCP. The Bank's motion, dated May 12, 2005, asserted five grounds to justify its request for severance:

(1) Cody's claims against the Bank are "entirely separate and have no relation to the issue . . . [of] what portion of the escrowed funds belongs to [Cody] and what portion belongs to [Elizabeth]."

(2) "[D]eciding the ownership of such funds furthers the important interests of judicial economy for all parties, counsel and the Court" because Elizabeth "will not have to actively participate in the trial of the primary claims[.]"

(3) "[S]evering this issue from the first-party action also serves the best interest of [Cody]. . . . If the Court agrees with [the Bank's expert], [Cody] will receive over \$150,000 in cash before trial . . . which is patently to his benefit."

(4) "[S]everance of this claim will benefit **all** parties to this action. [Elizabeth] will receive her interest of the escrowed funds and will not have to incur additional attorneys' fees, costs and inconvenience associated with the trial of this case."

(5) The Bank "will know [its] liability before trial." (Emphasis in original.)

The Bank's motion to sever was heard by Judge Thomas W. Cooper, Jr. Judge Cooper granted the severance motion by order dated July 25, 2005. Judge Cooper's reasoning tracked the grounds asserted in the Bank's May 12 motion, as the order emphasized factors such as convenience of parties, convenience of witnesses, judicial economy, and the "separate" and "independent" nature of Cody's legal claims and Elizabeth's "equitable claim as to a portion of the escrowed funds." At the hearing before Judge Cooper, the Bank acknowledged that neither the Bank "nor any of the co-conservators or anyone else is claiming any ownership of those funds. It's only how much belongs to [Cody and] how much belongs to [Elizabeth]. That's it."

The hearing to apportion the escrowed funds was scheduled to begin December 20, 2005 before Judge King. According to the record, Cody and Elizabeth reached an agreement on the eve of the hearing concerning the apportionment of the escrowed funds. Subject to court review and approval, Cody and Elizabeth agreed to apportion the funds 56% to 44%, respectively. The Bank objected to the settlement as it, in hopes of minimizing Cody's ultimate damage claim, advocated for Cody receiving a greater share of the funds. Elizabeth contended that the Bank did not have an interest in the funds, noting that she and Cody "have an absolute unfettered right to settle."

The issue of apportionment of the funds proceeded to a contested hearing, with the Bank taking a prominent role ostensibly on Cody's behalf. Judge King apportioned the funds, which then totaled $197,596.44, giving 56% to Cody ($110,654) and 44% to Elizabeth ($86,942.44), the same as the settlement agreement. The cross-appeals followed.

## II.

### APPEAL OF ELIZABETH POWELL

Elizabeth argues the Bank has no interest in the subject matter of the apportionment of the escrowed funds. We agree and dismiss the Bank's appeal.

We conclude the Bank has no interest in the subject matter of the apportionment of the escrowed funds and therefore lacks standing. As a consequence of its lack of interest in the escrowed funds, the Bank is not an aggrieved party under Rule 201 of the South Carolina Appellate Court Rules. The Bank is a party only to Cody's underlying damage claims. The Bank has never been a party to the severed equitable claim of Elizabeth. As Judge Cooper correctly noted in severing the legal and equitable claims, "[t]here is **no** over-lapping evidence in these *two separate cases brought by separate parties.*" (Second emphasis added.)

Standing refers to a "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Black's Law Dictionary* 1413 (7th ed.1999). "Standing is . . . that concept of justiciability that is concerned with whether a particular person may raise legal arguments or claims." 1A C.J.S. *Actions* § 101 (2005). It concerns an individual's "suffi-cient interest in the outcome of the litigation to warrant consideration of [the person's] position by a court." *Id.*

Standing is comprised of three elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct com-plained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favor-able decision."

*Smiley v. South Carolina Dep't of Health & Envt'l Control,* 374 S.C. 326, 329, 649 S.E.2d 31, 32–33 (2007) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (alteration in original)). "The party seeking to establish standing carries the burden of demon-strating each of the three elements." *Sea Pines Ass'n for the Protection of Wildlife, Inc. v. South Carolina Dep't of Natural Res.,* 345 S.C. 594, 601, 550 S.E.2d 287, 291 (2001).

■■ "As a general rule, to have standing, a litigant must have a personal stake in the subject matter of the litigation." *Ex parte Morris*, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006). "One must be a real party in interest, *i.e.,* a party who has a real, material, or substantial interest in the subject matter of the action, as opposed to one who has only a nominal or technical interest in the action." *Id.*

The Bank admits it has no ownership interest in the interpleaded funds. The Bank posits two grounds to support its claim of standing: (1) it is in Cody's best interest to receive all of the interpleaded funds; and (2) by allocating all of the interpleaded funds to Cody, the Bank reduces Cody's damages, thereby reducing the Bank's potential liability.

First, we reject as transparently thin the Bank's argument that it is seeking to protect Cody's best interest. We are unaware of any law (and the Bank has cited none) supporting the idea that one party may acquire standing by asserting the interest of an adverse party. The familiar principle that courts must zealously guard the rights of minors certainly does not give the Bank a pass on standing requirements. Second, while we understand the Bank's desire to limit its potential exposure in Cody's underlying action, this practical concern falls far short of the "injury in fact" standing requirement. Not every practical concern equates to the legal interest required for standing. The Bank denies any liability to Cody, and its interest in maximizing Cody's share of the interpleaded funds is therefore speculative and contingent.

We find instructive the supreme court's recent decision in *Ex Parte Government Employee's Insurance Co.,* 373 S.C. 132, 644 S.E.2d 699 (2007), in which the court addressed the sufficiency of a party's potential liability in relation to joinder and standing. Ronnie Cooper was injured in a motor vehicle accident. *Id.* at 134, 644 S.E.2d at 700. Cooper, claiming the status of a Class I insured, sought to stack underinsured motorist coverage provided by Government Employee's Insurance Co. (GEICO) to Yolanda Goethe. *Id.* According to Cooper, he and Goethe had a common law marriage. *Id.* GEICO denied the common law marriage claim and Cooper's stacking claim. *Id.* GEICO brought a declaratory judgment action against Cooper to determine the parties' rights pursu-

ant to the policy issued to Goethe. *Id.* Cooper responded by filing a family court action seeking an order recognizing the purported common law marriage. *Id.* Because the family court's decision on the common law marriage issue would impact GEICO's ability to protect its interest in the circuit court declaratory judgment action, GEICO moved to join the family court action. *Id.* at 134–35, 644 S.E.2d at 700.

Finding that GEICO was not a necessary party for joinder and did not have standing to intervene, the family court denied GEICO's motion. *Id.* at 135, 644 S.E.2d at 700. The supreme court affirmed, referring to GEICO's interest in the common law marriage determination as "insufficient," "merely tangential," and "merely peripheral." *Id.* at 136–37, 644 S.E.2d at 701–02. The supreme court, while well aware that "the existence of a common law marriage may impact GEICO's liability to Cooper," *id.* at 136, 644 S.E.2d at 701, concluded that "GEICO's interest is in the *financial implications* of the family court's decision, which is peripheral to the subject matter before the court." *Id.* at 138–39, 644 S.E.2d at 702 (emphasis added).

GEICO presented a stronger case for standing than does the Bank. The Bank's interest in the allocation of the interpleaded funds falls far short of conferring standing. The Bank's potential and speculative liability to Cody is tangential and peripheral to the precise allocation of the interpleaded funds between Cody and Elizabeth. As with GEICO, the Bank's interest is merely in the "financial implications" of the trial court's decision allocating the interpleaded funds.

 We now turn to Elizabeth's specific assignments of error concerning the Bank's lack of standing. Elizabeth first claims the trial court erred in allowing the Bank to prevent her and Cody from settling the matter of the allocation of escrowed funds. As noted, Elizabeth and Cody reached an agreement concerning their respective ownership interest of the funds. When the Bank objected to the proposed settlement, Elizabeth challenged the Bank's standing to do so. The trial court erred. Yet the error, by itself, would not warrant reversal, for the trial court ultimately apportioned the funds in the same manner as the parties had proposed in their settlement. Consequently, Elizabeth was not prejudiced by the

trial court's ruling. *See Brown v. Pearson,* 326 S.C. 409, 417, 483 S.E.2d 477, 481 (Ct.App.1997) (stating "[a]n error not shown to be prejudicial does not constitute grounds for reversal"); *McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("Appellate courts recognize ... an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter.").

▮ Elizabeth finally challenges the Bank's status as an "aggrieved party" for appeal purposes. There is no material distinction in general standing principles juxtaposed to the ability of an "aggrieved party" to appeal pursuant to Rule 201(b) of the South Carolina Appellate Court Rules. *See Beaufort Realty Co. v. Beaufort County,* 346 S.C. 298, 301–03, 551 S.E.2d 588–89, 589 (Ct.App.2001) (conducting an analysis under both Rule 201 and general standing principles in addressing whether a party had standing to appeal).

▮ In considering the Bank's ability to appeal from the order apportioning the escrowed funds, the Bank is neither a "party" nor "aggrieved." As noted earlier, the Bank has never been a party to the severed equitable action. Judge Cooper specifically stated in his order granting the motion for a severance that this matter involves "two separate cases brought by separate parties." In addition, Elizabeth's counsel pointed out at a subsequent hearing that the Bank was never made a party to the equitable action.

▮ Rule 201(b) limits the ability to appeal to "[o]nly a party aggrieved by an order, judgment ... or decision...." Rule 201(b), SCACR. This court has previously explained that under Rule 201(b), "[t]he word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right, or the imposition on a party of a burden or obligation." *Beaufort Realty Co.,* 346 S.C. at 301, 551 S.E.2d at 589. "A party is aggrieved by a judgment or decree when it operates on his or her rights of property or bears directly on his or her interest." *Id.* In light of *Ex Parte Government Employee's Insurance Co.,* the Bank may not properly claim that the trial court's apportionment of the escrowed funds affects its property rights or otherwise bears on its interest.

Because the Bank has no interest in the escrowed funds, the Bank is not aggrieved by the trial court's apportionment of the funds between Cody and Elizabeth. We dismiss the Bank's appeal.

Elizabeth conceded at oral argument that the dismissal of the Bank's appeal renders the balance of her appeal moot. We therefore decline to address the balance of her appeal.

**APPEAL DISMISSED.**

ANDERSON and HUFF, JJ., concur.