684 S.E.2d 211

MICHAEL P. and Lisa P., Appellants,

v.

GREENVILLE COUNTY DEPARTMENT OF SOCIAL
SERVICES, Roy H., James T., John Doe, Tiniki J.,
and Erin S., Defendants,

of whom Greenville County Department of Social Services,
Roy H., Tiniki J., and Erin S. are the Respondents.

Baby M., a minor under the age of 14 years.

No. 4621.

Court of Appeals of South Carolina.

Submitted Sept. 1, 2009.

Decided Oct. 2, 2009.

Rehearing Denied Oct. 22, 2009.

408

David Holmes, of Greenville, for Appellants.

Deborah Murdock, of Mauldin; Jennifer L. Coyle, Margaret Chamberlain, and Symmes Watkins Culbertson, all of Greenville; for Respondents.

Jefferson Glenn Wood, of Greenville, for Guardian Ad Litem.

PER CURIAM.

Michael and Lisa P. (Appellants) appeal from an order of the family court finding they lacked standing to petition the court to adopt their former foster child (Child). Because

Appellants previously declined to adopt Child and the Department of Social Services (DSS) has since placed Child in a new, pre-adoptive home, we affirm.[1]

## FACTS

On January 19, 2007, Child was born with cocaine in his system and was immediately placed in emergency protective custody. After DSS filed a complaint to remove him from his biological mother (Mother), the family court granted DSS custody, and in turn, DSS placed him in foster care with Appellants.

Approximately one year later, DSS approached Appellants about adopting Child. Appellants claim they strongly considered adopting Child, but ultimately declined in order to allow a younger, childless couple to adopt. According to Appellants, when DSS removed Child from Appellants' home, the agency told them Child would be placed with a young father and mother in their twenties and "even suggested that there was the possibility that the Appellants could be involved in taking [Child] to the new home and may be involved in his life thereafter."

On February 6, 2008, DSS moved Child from the Appellants' foster home to the home of Erin S. (Respondent). DSS had previously approved Respondent, age thirty-four, as a "pre-adoptive, foster parent."

On June 10, 2008, four months after Child had been removed from their home, Appellants filed a complaint seeking to adopt Child or, alternatively, to obtain custody of Child. Additionally, Appellants complained had they known DSS placed Child with a lesbian, they would not have agreed to release Child. The same day, Appellants filed a motion for temporary relief, asking the family court to place Child in their home immediately or to allow them "substantial visitation."

On July 7, 2008, the family court conducted a hearing on Appellants' motion for temporary relief. Appellants stated that, since filing their motion, they had obtained consent for

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

the adoption of Child from both natural parents and therefore had not served them. In addition to the biological parents' absence, Child's guardian ad litem, Jeff Wood, was also not present at the hearing. Because the Appellants could not prove service on Wood or the biological parents, the court continued the hearing.[2]

Subsequently, Respondent filed a motion to intervene in the Appellants' adoption action. The family court granted her motion, and Respondent moved to dismiss the adoption petition, arguing Appellants lacked standing.

On October 13, 2008, the family court resumed its hearing on Appellants' motion for temporary relief that had been continued in July. At this hearing, the court expressed concern about ruling on a motion for temporary relief before it ruled on Respondent's motion to dismiss the action. DSS added that Mother had been contacting the DSS office and demanding to see Child; as a result, DSS requested a ruling on whether the relinquishments signed by Mother and child's biological father (Father) were valid. DSS explained that Mother's relinquishment stated she wanted the Appellants to adopt Child, and DSS was unsure "if she would have signed it if she had known that she had no say so now."

The guardian advised the family court that both foster homes provided a nurturing environment and stated he did not want Child "to get thrown back and forth during litigation." The court expressed concern that Father, although present, was unrepresented by counsel. The court appointed an attorney to represent Father and continued the hearing to allow all motions, claims, and counterclaims to be decided at the same time.

The family court reconvened the hearing on Appellants' motion for temporary relief on November 5, 2008. The hearing also addressed DSS's motion asking the court to determine the validity of the birth parents' relinquishments and Respondent's motion to dismiss for lack of standing.

---

2. As the Appellants' petition for adoption and request for temporary relief were pending, DSS's underlying removal action continued against Child's biological parents. On July 17, 2008, the Appellants filed a motion to intervene in the removal action. The family court denied the motion to intervene, and Appellants did not appeal from this order.

With regard to the relinquishments, Mother's attorney stated: "She did want to let the court know that she would have signed this relinquishment regardless of who would ultimately get the custody or be able to adopt the child. She wants the relinquishment to stand." Father's attorney added: "It's his desire today to go ahead and agree to relinquishment of parental rights...." The court then advised the attorneys the relinquishments were not valid until all conditions were deleted.

The court heard testimony from Mother and Father regarding their understanding of the relinquishments. Mother and Father confirmed they understood they had no control over DSS's placement of Child after they relinquished parental rights. The court allowed the Mother and Father to strike the conditions from the relinquishments. In its written order, the court found Mother and Father "fully and unconditionally relinquish[ed] their parental rights to [Child]."

Next, the family court addressed Respondent's motion to dismiss Appellants' complaint based on lack of standing. Appellants argued they had standing under section 63–9–60 of the South Carolina Code (2008) [3] and because they are foster parents with whom Child spent his first year. Respondent argued that although part (A) of section 63–9–60 permits "any party to adopt," part (B) clarifies the section and does not apply to a child placed by DSS for the purpose of adoption.

The family court granted Respondent's motion to dismiss, finding Appellants lacked standing under section 63–9–60 because Child was placed by DSS for the purpose of adoption. Appellants filed a Rule 59(e), SCRCP, motion, arguing the court erred by finding the conditional element of the birth parents' relinquishments rendered them invalid and by failing to address their standing by virtue of the biological parents' relinquishments. They reasserted their argument of standing pursuant to section 63–9–60; alleged if Respondent had standing because she is a foster parent, then the same is true for them; and complained the family court did not address the best interests of Child. The motion was denied February 5, 2009. In a March 17, 2009 order, the family court granted the

---

**3.** At the time of the hearing, this section was codified as section 20–7–1670.

Appellants' motion to stay further adoption proceedings pending the outcome of any appeals, though DSS was permitted to continue TPR efforts. This appeal followed.

## LAW/ANALYSIS

■ Appellants argue they have standing pursuant to section 63–9–60 of the South Carolina Code (2008), or in the alternative, they have standing by virtue of being the former foster parents of Child. They further argue the family court erred by not addressing Respondent's sexual orientation and how it affected Child's best interest. We disagree.[4]

## I. Standing Under Section 63–9–60 of the South Carolina Code

Section 63–9–60, titled "Persons who may adopt," provides:

(A)(1) *Any South Carolina resident may petition the court to adopt a child.* Placement of children for adoption pursuant to this article is limited to South Carolina residents with exceptions being made in the following circumstances only:

---

4. Appellants also contend they have standing by virtue of the biological parents' relinquishments and the family court erred in finding the relinquishments were rendered illegal by a condition. We find this issue is not properly preserved for review because Appellants did not object when the family court ordered the parties to remove the conditions from the relinquishments. Furthermore, they raised this argument for the first time in their Rule 59 motion. *See Spreeuw v. Barker,* 385 S.C. 45, 682 S.E.2d 843 (Ct.App.2009) (Shearouse Adv. Sh. No. 34 at 64) (finding arguments raised to the family court for the first time in post-trial motions pursuant to Rule 59 and Rule 60, SCRCP, not preserved for appellate review). Likewise, Appellants' arguments they have standing (1) pursuant to section 63–3–550 of the South Carolina Code (Supp.2008), (2) because they are "de facto custodians" of Child, and (3) based on the holding of *Morgan v. S.C. Dep't of Soc. Servs.,* 280 S.C. 577, 313 S.E.2d 350 (Ct.App.1984) are not preserved for review and are manifestly without merit. *See Knight v. Waggoner,* 359 S.C. 492, 597 S.E.2d 894 (Ct.App.2004) (explaining arguments made for first time on appeal are not preserved for review); *see also* S.C.Code Ann. § 63–3–550 (2008) (explaining the section pertains only to proceedings involving a neglected or delinquent child); S.C.Code Ann. § 63–15–60(D) (2008) ("No proceeding to establish whether a person is a de facto custodian may be brought concerning a child in the custody of [DSS]."); *Morgan,* 280 S.C. 577, 313 S.E.2d 350 (determining whether DSS must consent to an adoption when DSS has temporary custody of a minor who is already free for adoption).

[ (a)-(e) omitted]

(f) the child has been in foster care for at least six months after having been legally freed for adoption and no South Carolina resident has been identified as a prospective adoptive home.

(2) Before a child is placed within or outside the boundaries of this State for adoption with nonresidents of this State, compliance with Article 11 (Interstate Compact on the Placement of Children) is required, and a judicial determination must be made in this State that one of the circumstances in items (a) through (f) of this section applies. . . .

(B) *This section does not apply to a child placed by the State Department of Social Services or any agency under contract with the department for purposes of placing that child for adoption.* Neither the department nor its contractors may delay or deny the placement of a child for adoption by a nonresident if that nonresident has been approved for adoption of the child by another state authorized to approve such placements pursuant to the Interstate Compact on Placement of Children. The department shall provide an opportunity for a hearing, in accordance with the department's fair hearing procedures, to a nonresident who believes that the department, in violation of this section, has delayed or denied placement of a child for adoption.

(Emphasis added).

Appellants rely on the introduction to section 63–9–60(A)(1) to assert that they have standing to petition to adopt Child because it provides "any South Carolina resident may adopt." Appellants argue the first sentence of section 63–9–60(B) applies only to subsection (B) and does not apply to section 63–9–60 in its entirety.

▮▮▮ The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007). Thus, in interpreting statutes, we look to the plain meaning of the statute and the intent of the legislature. *State v. Gaines*, 380 S.C. 23, 32, 667 S.E.2d 728, 733 (2008). A statute's language must be construed in light of the intended purpose of the statute. *Id.* at 33, 667 S.E.2d at 733. Whenever possible,

legislative intent should be found in the plain language of the statute itself. *Id.*

Appellants argue the purpose of section 63–9–60(B) is to clarify that "the requirement that a South Carolina resident adopt does not apply if children are placed with DSS for the purposes of adoption." However, part (A)(1)(f) already provides a non-resident may adopt when "the child has been in foster care for at least six months after having been legally freed for adoption and no South Carolina resident had been identified as a prospective adoptive home." § 63–9–60(A)(1)(f).

Furthermore, Appellants' position that the Legislature used the word "section" interchangeably with the word "subsection" belies other portions of Chapter 9 of Title 63 wherein the word "section" is clearly different from the word "subsection." *See, e.g.,* § 63–9–330(B) (2008) ("When a child placing agency accepts a relinquishment for the purpose of adoption, which gives the agency the right to consent to an adoption of the child, and which contains the information required in *subsection (A)* of this *section* the consent of the agency for the purpose of adoption is not required to meet the requirements of *subsection (A)*. However, the sworn document relinquishing the child must be filed with the court pursuant to *subsection (C)* of *[s]ection* 63–9–710.") (emphasis added).

We find the plain meaning of the statute and intent of the Legislature when enacting subsection (B) of 63–9–60 was to clarify that not just "any South Carolina resident" can petition to adopt a child when the child has been placed by DSS in another home for the purposes of adoption. Accordingly, Appellants do not have standing based on this statute because Child was placed by DSS in Respondent's home for purposes of adoption.

## II. Standing As Former Foster Parents

Appellants also argue they have standing by virtue of being Child's former foster parents. We disagree.

Standing refers to a party's right to make a legal claim or seek judicial enforcement of a duty or right. *Powell ex rel. Kelley v. Bank of Am.,* 379 S.C. 437, 444, 665 S.E.2d 237, 241 (Ct.App.2008). Generally, to have standing, a litigant

must have a personal stake in the subject matter of the litigation. *Id.* Standing is comprised of three elements: (1) the plaintiff must have suffered an injury-in-fact that is concrete and particularized, and actual and imminent as opposed to hypothetical; (2) the injury and the conduct complained of the defendant must be causally connected; and (3) it must be likely that the injury will be redressed by a favorable decision. *Id.*

■ To begin with, we note foster parents' procedural and due process rights with regard to their foster children are more limited than the rights of legal parents. In *Smith v. Organization of Foster Families For Equality & Reform,* Justice Brennan explained:

> [T]here are ... important distinctions between the foster family and the natural family. First, unlike the earlier cases recognizing a right to family privacy, the State here seeks to interfere, not with a relationship having its origins entirely apart from the power of the State, but rather with a foster family which has its source in state law and contractual arrangements .... whatever emotional ties may develop between foster parent and foster child have their origins in an arrangement in which the State has been a partner from the outset.

431 U.S. 816, 845–46, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (citations omitted). Because a foster parent's connection to a child is, at least initially, based solely on the contract the foster parent enters into with the State, once that contract voluntarily ends, as was the case here, the foster parent's legal interest in the child becomes even more tenuous.

■ South Carolina has yet to address whether former foster parents have standing to adopt or seek visitation of their former foster child; however, courts in other jurisdictions have analyzed this issue. In Pennsylvania, the superior court held former foster parents lacked standing to intervene in adoption proceedings because the contractual arrangement between the foster parents and their children was on a temporary basis, unlike adoptive placement, which " 'implies a permanent substitution of one home for another.' " *In re Adoption of S.C.P.,* 364 Pa.Super. 257, 527 A.2d 1052, 1054–55 (1987) (quoting *Smith,* 431 U.S. at 824, 97 S.Ct. 2094). Be-

cause the child protective agency resumed legal custody of the child after the child left the care of the former foster family, the Pennsylvania court held former foster parents lacked legal standing to intervene in the adoption proceedings without the agency's written consent. *Id.*

Similarly, the Oklahoma Court of Civil Appeals held former foster parents lacked standing to initiate an adoption proceeding. *In re Adoption of I.D.G.,* 42 P.3d 303 (Okla.Civ.App. 2002). In *Adoption of I.D.G.,* the foster child lived with the foster family for ten months when the agency removed the child from the family's care after confirming allegations of child abuse. *Id.* at 305. In a later proceeding, the former foster parents attempted to adopt the child, but the court held they lacked standing:

> I.D.G. lived with Petitioners for ten months. While this is not an insignificant period of time, particularly in the course of a very young life, it does not convey upon Petitioners the right, independent of their contractual right as foster parents, to control the ultimate placement of I.D.G. Petitioners' rights as foster parents are set out in contract and statutes. Petitioners undoubtedly had standing to contest DHS's decision to remove I.D.G. from their home, but they do not have standing to pursue his adoption in a separate proceeding initiated outside of the deprived proceeding and after I.D.G. was removed from their home.

*Id.* at 307.

The West Virginia Supreme Court has expounded upon the sound policy reasons for not allowing former foster parents standing to seek custody:

> [The] need for rapid finality in abuse and neglect proceedings is attributable to the overriding concern for the subject child's welfare. A child deserves resolution and permanency in his or her life. Moreover, the best interests of the child is the polar star by which decisions must be made which affect children. Accordingly, in the interest of expediting the resolution and conclusion of abuse and neglect proceedings, we are hesitant to expand the realm of intervenors to individuals who are no longer guardians or custodians of the children at issue for fear that unjustified proce-

dural delays undoubtedly would attend the ever-increasing roster of interested participants.

*In re Michael Ray T.,* 206 W.Va. 434, 525 S.E.2d 315, 323 (1999) (quotations and citations omitted). Courts in other jurisdictions analyzing the issue of standing for former foster parents in the context of custody proceedings have also concluded former foster parents lack standing. *See In re Brandon A.,* 50 A.D.3d 395, 395–96, 855 N.Y.S.2d 457 (2008) (holding former foster mother lacked standing to intervene in custody hearing because she did not have any protected liberty interest in the foster-parent-and-child relationship); *Valentine v. Lutz,* 512 N.W.2d 868, 870–71 (Minn.1994) (holding former foster parents did not have the right to intervene in a custody hearing involving a child who lived with them for four years because they were not currently providing care nor under a duty to provide care to the child).

Turning to the instant case, we find Appellants do not have standing to petition the family court to adopt Child. Any rights Appellants had with regard to Child ended after they chose not to administratively challenge the removal of Child from their care. *See* 27 S.C. Reg. 114–140(A)(1)(c) (Supp. 2008) (allowing foster parents the right to appeal the removal of a foster child from the foster home); *cf. Ex parte Morris,* 367 S.C. 56, 624 S.E.2d 649 (2006) (finding a custodian who contested the removal of child from her home had standing in a dependency hearing). Had Appellants chosen to contest the removal, they would have had standing to do so; however, as former foster parents who declined to challenge DSS's removal of Child, Appellants do not have standing to initiate a private adoption action once Child was placed by DSS into a different pre-adoptive home.

## III. Child's Best Interest

 Finally, Appellants argue the family court erred by not addressing their arguments concerning Respondent's sexual orientation and how it impacts upon Child's best interest. We disagree.

Standing is a legal concept concerning whether a particular person may raise legal arguments or claims. Black's Law Dictionary 1536 (9th ed. 2009). While a child's best interest is

the paramount consideration in every adoption, it has no bearing on the preliminary determination of whether a party has standing. Accordingly, we find no error in the family court's refusal to consider arguments regarding child's best interest *before* determining whether Appellants have standing to initiate an adoption action.

## CONCLUSION

Based on the foregoing, the decision of the family court is **AFFIRMED.**

LOCKEMY, J., concurs in a separate opinion.

LOCKEMY, J., concurring.

I concur with the majority's holding that former foster parents who fail to administratively challenge the removal of their foster child do not have standing to initiate a private adoption action once DSS places the child into a different pre-adoptive home. I write separately, however, because I want to make clear that foster parents are not powerless against DSS when a foster child is removed. *See* S.C.Code Ann. Regs. 114–140(A)(1)(c) (Supp.2008) (allowing foster parents to challenge the removal of a child from their home).

In this State and, indeed in this country, we hold dear the right to have only those elected to office by the people hold sway over our activities through constitutionally permitted limits within laws passed, ratified, and signed into law. Sometimes the operation of state and federal agencies cause us great concern because although they are authorized by these duly enacted laws to take certain actions, there seems to be a shield between the people and the agency. This shield is an artificial one when an agency acts within the constraints of permitted statutes because the agency is carrying out the will of the people as authorized by its duly elected representatives. However, if the agency goes beyond its authorization or tries to exert power it does not and should not have, then we do not have government by the people but government taken from the people. Such is a dreaded concept that caused fear in philosophers like John Locke and Baron de Montesquieu, who believed in republican government based on the consent of the

governed. Thus, it is imperative that our governmental acts are derived only from the people through legislative or constitutional authority.

This case troubles me because Appellants have lodged serious allegations against DSS concerning what the agency told them about Child's new placement, and I do not believe we should discount those allegations when the family court made no factual findings in this regard. If true, the allegations made by Appellants against DSS would threaten to put that dangerous shield between the people and its government. Accordingly, I believe it is imperative to emphasize that foster parents can administratively challenge the removal of a foster child, so long as they lodge their challenge "within thirty (30) days of receiving notification of adverse action." *See* S.C.Code Ann. Regs. 114–130(B)(1), 114–140(C)(2) (Supp.2008). Here, if as alleged by Appellants, DSS personnel told them that they could bring Child to his new home and remain involved in his life, Appellants could have, upon realizing this was not the case, challenged the removal of Child. Appellants did not do so within the time allowed by statute and therefore have no standing to challenge the removal at this time. Under these circumstances, I agree with the majority and the family court's determination that Appellants lack standing to initiate an adoption action.