THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Kem Dempsey and
 L.A. Blue, Appellants,
 v.
 Hugh Allen
 Hoover and Richland County, Respondents.
 
 
 

Appeal From Richland County
 L. Casey Manning, Circuit Court Judge

Unpublished Opinion No.  2011-UP-111
 Heard December 8, 2010  Filed March 22,
2011

AFFIRMED

 
 
 
 Kirby D. Shealy, III, and Jay Bender, both of Columbia, for
 Appellants.  
 Andrew F. Lindemann and William H. Davidson, II, both of Columbia,
 and John W. Carrigg, Jr., of Irmo, for Respondents.
 
 
 

PER CURIAM:  After Hugh
 Allen Hoover began developing his property on Lake Murray, Kem Dempsey and L.A.
 Blue (collectively, Appellants) sought declaratory judgment and injunctive
 relief against both Hoover and Richland County (the County).  The circuit court
 granted summary judgment in favor of Hoover and the County.  Appellants appeal,
 arguing the circuit court erred (1) in finding they presented no justiciable
 controversy and (2) in ruling Appellants failed to demonstrate irreparable
 harm.  We affirm.     
FACTS
Hoover
 was a building inspector employed by the County.  He and Appellants owned waterfront
 property located on Lake Murray in the County.  Dempsey's property adjoined
 Hoover's, and Blue's property was nearby on the other side of the cove.  In
 April 2003, Hoover cleared trees from his property.  Five months later, the
 County approved Hoover's request to subdivide his property into three separate
 lots.  Appellants complained to the County that Hoover's development activities
 violated county codes, ordinances, and protocols.  The County halted Hoover's
 development activities twice but later allowed them to proceed.  
In
 October 2006, Appellants filed an action seeking a declaratory judgment and
 injunctive relief against Hoover and the County.  Appellants alleged Hoover
 developed his property without first securing the required county approval of
 storm water management and erosion control plans, graded the property without a
 permit, and installed an unpermitted office trailer instead of the modular home
 for which he had obtained a permit.  In addition, Appellants asserted Hoover
 improperly installed sewer lines on his property that had to be dug up and
 re-installed, leaving open trenches, after the South Carolina Department of
 Transportation determined the lines encroached on its right of way.  Appellants
 claimed Hoover's actions caused "extreme erosion" of the cleared
 land.  Appellants also alleged Hoover committed fraud by listing the property
 as his primary residence for tax purposes and by paying for only one sewer tap
 line but installing four.  With regard to the County, Appellants alleged that
 despite their reports of Hoover's misdeeds, the County refused to investigate
 or enforce its ordinances.  
Appellants
 sought three declaratory judgments against Hoover.  First, they sought a declaration
 that Hoover illegally cleared and graded his property, erected an office
 trailer without a permit, improperly placed four sewer taps, failed to comply
 with permitting and setback requirements, and abused his position as an
 employee of the County.  They sought a second declaration that Hoover
 fraudulently used his property as his primary residence for tax purposes.  They
 sought a third declaration that he committed other failures relating to
 subdividing his property.  Appellants also sought a declaration that the County
 failed to inspect or investigate Hoover's development, failed to enforce codes
 and ordinances, and afforded Hoover preferential treatment in the development
 of his property.  
In
 addition, Appellants applied for three types of injunctive relief against both
 Hoover and the County.  Appellants sought an order enjoining Hoover from
 conducting additional work on his property and from further subdividing it. 
 They also sought an injunction preventing the County from issuing any
 certificates of occupancy for Hoover's property.    
The
 circuit court denied Appellants' motion for a temporary restraining order (TRO)
 and preliminary injunction, noting in its order that their counsel conceded
 they would not suffer irreparable harm in the absence of an injunction.[1] 
 On May 7, 2007, the County issued a certificate of occupancy permitting Hoover
 to move into his new structure.  
At
 his deposition, Dempsey testified Hoover's development and failure to maintain
 his property were eroding the soil and "damaging the water quality of that
 cove, which [a]ffects the value also of our property, and also the use of the
 lake and our pleasure of using the lake."  When asked whether the sediment
 from Hoover's eroding land was deposited into the lake, Dempsey stated he was
 not sure.  However, he had a gut feeling that the erosion was causing the
 market value of his own property to drop.  Although Dempsey had consulted with
 an unidentified man about possible devaluation of his property, the man
 declined to express an opinion about the impact of Hoover's activity on the
 value of Dempsey's property.  Dempsey's concern about possible devaluation of
 his property came from comments made by neighbors and visitors to his property.  
Blue
 recalled at his deposition that his information on Hoover's clearing and
 construction activities came from Dempsey, who "had written notes." 
 Blue believed eroding sediment from Hoover's cleared tract would be carried
 into the cove, which Blue and his neighbors had dredged, and would limit their
 access to navigable water.    
Appellants
 deposed Hoover's immediate supervisor, Marvin Phipps.  According to Phipps,
 each building is designated as being either for business occupancy or
 residential occupancy.  Regardless of whether a building is modular or
 site-built, when it is moved, it loses its occupancy status.  When the building
 reaches its destination, it receives a new occupancy status based upon its
 purpose at the new location and must conform to the law applicable to its new
 status.  Phipps identified Hoover's structure as modular rather than mobile by
 the data plate attached to the building.  According to Phipps, modular homes
 carry a data plate with a certificate permitting them to move "anywhere in
 the State of South Carolina."  In addition to naming different inspectors
 who handled Hoover's construction project on the County's behalf, he testified
 the County performed all its obligations in this matter "to code and to
 the letter."  
The
 record includes a copy of a vehicular title issued by the State of South
 Carolina to Easy Lifestyle, Inc., for a 1998-model vehicle.  The title lists
 the vehicle's body style as "MBH" and its model as
 "28X60."  This description appears to fit a double-wide mobile home
 measuring twenty-eight feet by sixty feet.  Phipps testified the vehicle
 identification number from the title matched the number identifying Hoover's
 modular structure on a plat of Hoover's property.  Hoover testified at his
 deposition that he purchased a modular office building and placed it on the
 lot, intending to convert it to a home.  Hoover denied knowing at the time of
 purchase that the structure had previously been titled as a mobile home.  
On
 October 30, 2008, the circuit court heard arguments on the County's motion for
 summary judgment.[2] 
 The County argued summary judgment was appropriate because Appellants sought to
 have the circuit court impermissibly substitute itself for the proper administrative
 authority in a county regulatory matter and, alternatively, because Appellants
 failed to identify a justiciable controversy.  In support of its second
 argument, the County pointed to Appellants' concessions at the TRO hearing that
 (1) the relief they sought in their motion for a TRO and preliminary injunction
 was the same as the relief they sought in their Complaint and (2) they would
 not suffer irreparable harm if the TRO were not issued.  In addition, the
 County identified the 2007 issuance of the certificate of occupancy as an
 intervening event that rendered Appellants' declaratory judgment case moot.    
In
 response, Appellants argued Hoover's modular office building was titled as a
 mobile home, a structure not allowed by law to be installed in a flood hazard
 area, and that the unit's foundation did not conform to code.  Appellants
 challenged the validity of the certificate of occupancy in light of the facts
 and contended a public body should not be able to avoid liability for
 misconduct merely by issuing a certificate.  Finally, Appellants reasoned that
 while an injunction against construction or issuance of a certificate of
 occupancy might no longer be appropriate, they were entitled to other relief,
 such as an order requiring Hoover's structure to comply with the law.  
On
 April 1, 2009, the circuit court granted summary judgment in favor of Hoover
 and the County.  Specifically, the circuit court found the declaratory judgment
 actions were moot because the County's subsequent grant of a certificate of
 occupancy rendered Appellants' issues non-justiciable.  In addition, the
 circuit court found Appellants were unable to demonstrate they would suffer
 irreparable harm in the absence of injunctive relief and dismissed their
 complaint with prejudice.  This appeal followed.  The County filed a brief, but
 Hoover did not.  

STANDARD OF REVIEW
When reviewing the grant of a summary judgment motion, this court
 applies the same standard that governs the circuit court under Rule 56(c),
 SCRCP.  Englert, Inc. v. Netherlands Ins. Co., 315 S.C. 300, 302, 433
 S.E.2d 871, 873 (Ct. App. 1993).  This standard requires all facts and
 reasonable inferences to be drawn therefrom to be viewed in the light most
 favorable to the appellant.  Id.  "Our
 standard of review in evaluating a motion for summary judgment is to liberally
 construe the record in favor of the nonmoving party and give the nonmoving
 party the benefit of all favorable inferences that might reasonably be drawn
 therefrom."  Estes v. Roper Temp. Servs., Inc., 304 S.C. 120, 121,
 403 S.E.2d 157, 158 (Ct. App. 1991).  "An appellate court may decide questions of law with no particular
 deference to the [circuit] court."  In re Campbell, 379 S.C. 593,
 599, 666 S.E.2d 908, 911 (2008).  However, the courts accord "great
 deference . . . [to] the decisions of
 those charged with interpreting and applying local zoning ordinances."  Eagle
 Container Co. v. Cnty. of Newberry, 379 S.C. 564, 568, 666 S.E.2d 892, 894
 (2008).  Nevertheless, in applying the preponderance of the evidence standard,
 the nonmoving party is only required to "submit a mere scintilla of
 evidence in order to withstand a motion for summary judgment."  Hancock
 v. Mid-South Mgmt. Co., 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).
LAW/ANALYSIS
I. Justiciable
 Controversy
With regard to their claims for declaratory judgment, Appellants
 contend the circuit court erred in concluding they failed to present a justiciable controversy because
 an intervening event rendered their argument moot.  We agree but affirm the
 circuit court on other grounds appearing in the record.  
Summary
 judgment is appropriate when "the pleadings, depositions, answers to
 interrogatories, and admissions on file, together with the affidavits, if any,
 show that there is no genuine issue as to any material fact and that the moving
 party is entitled to a judgment as a matter of law."  Rule 56(c), SCRCP.  A
 declaratory judgment issued in accordance with sections 15-53-10 through
 15-53-140 of the South Carolina Code (2005 & Supp. 2010) must comply with
 the South Carolina Rules of Civil Procedure.  Rule 57, SCRCP.  "The
 existence of another adequate remedy does not preclude a judgment for
 declaratory relief in cases where it is appropriate."  Id.  
Generally,
 appellate courts only consider "cases presenting a justiciable
 controversy."  Sloan v. Friends of Hunley, Inc., 369 S.C. 20, 25,
 630 S.E.2d 474, 477 (2006).  According to our supreme court:  

 A
 justiciable controversy exists when there is a real and substantial controversy
 which is appropriate for judicial determination, as distinguished from a
 dispute that is contingent, hypothetical, or abstract.   A moot case exists
 where a judgment rendered by the court will have no practical legal effect upon
 an existing controversy because an intervening event renders any grant of
 effectual relief impossible for the reviewing court.  If there is no actual
 controversy, this Court will not decide moot or academic questions. 

Id. at 25-26, 630 S.E.2d at 477.  
We
 affirm the grant of summary judgment on other grounds appearing in the record. 
 "The appellate court may affirm any ruling, order, decision or judgment
 upon any ground(s) appearing in the Record on Appeal."  Rule 220(c),
 SCACR.  In the case at bar, Appellants lacked standing to assert a claim
 against Hoover and the County.  

 Standing
 refers to a party's right to make a legal claim or seek judicial enforcement of
 a duty or right.  Generally, to have standing, a litigant must have a personal
 stake in the subject matter of the litigation.  Standing is comprised of three
 elements: (1) the plaintiff must have suffered an injury-in-fact that is
 concrete and particularized, and actual and imminent as opposed to
 hypothetical; (2) the injury and the conduct complained of the defendant must
 be causally connected; and (3) it must be likely that the injury will be
 redressed by a favorable decision.

Michael P. v. Greenville
 Cnty. Dep't of Soc. Servs., 385 S.C.
 407, 415-16, 684 S.E.2d 211, 215 (Ct. App. 2009) (internal citations omitted). 
 Legal action may only be instituted by a person who has standing.  Sloan v.
 Greenville Cnty., 356 S.C. 531, 547, 590 S.E.2d 338, 347 (Ct. App. 2003).  

 To have
 standing, one must have a personal stake in the subject matter of the lawsuit. 
 To have standing . . . one must be a real party in interest.  A real
 party in interest is one who has a real, material, or substantial interest in
 the subject matter of the action, as opposed to one who has only a nominal or
 technical interest in the action.  

Id. at 547-48, 590 S.E.2d at 347 (internal citations and
 quotation marks omitted).  
We
 find Appellants lack standing in this case because they have failed to prove an
 injury-in-fact.  See Michael P., 385 S.C. at 415-16, 684 S.E.2d
 at 215 (requiring an actual injury, a causal connection between the
 complained-of action and the injury, and an ability by the court to redress the
 injury with a favorable decision).  Appellants sought declaratory judgments holding
 Hoover illegally cleared and graded his property, erected an unpermitted office
 trailer, improperly placed sewer taps, failed to comply with permitting and setback requirements, and abused his
 position as an employee of the County.  They sought a second declaratory
 judgment against Hoover for his alleged fraudulent use of his property as his
 primary residence for tax purposes.  They sought a third declaratory judgment
 against him for his failures relating to subdividing his property.  In
 addition, Appellants also sought a declaratory judgment against the County for
 failing to inspect or investigate Hoover's development, failing to enforce
 codes and ordinances, and affording Hoover preferential treatment in the
 development of his property.  None of these sought-after declaratory judgments
 identifies any injury to Appellants.  Furthermore, Appellants failed to produce
 even a scintilla of evidence to support their allegations that the construction
 activities on Hoover's lot damaged either their property values or their
 enjoyment of the lake, which they acknowledged they do not own.  
Moreover,
 because Appellants failed to produce any evidence the County's or Hoover's
 actions caused them to suffer an actual injury, they are unable to satisfy
 either of the remaining elements of standing.  Id.  Neither causation
 nor redressability exists in the absence of an injury-in-fact because both
 elements rely on the presence of the injury.  Without injury, causation is
 merely action unconnected to any effect.  Without injury, redressability lacks
 either an image by which to determine the nature of the appropriate remedy or a
 quantity by which to measure how much remediation is due.  Consequently,
 Appellants have failed to establish the requisite elements of standing, and
 their claim is non-justiciable.  
II.      Irreparable Harm
Next,
 with regard to their applications for injunctive relief, Appellants argue the
 circuit court erred in concluding they failed to produce any evidence to show
 they were irreparably harmed.  We disagree.  
Appellate
 courts review orders granting or denying injunctions for abuse of discretion.  Cnty.
 of Richland v. Simpkins, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002).
  An abuse of discretion occurs when the circuit court enters a decision that is
 either unsupported by the evidence or controlled by an error of law.  Id.
An
 injunction is equitable in nature and will only be granted when no adequate
 remedy exists at law.  Strategic Res. Co. v. BCS Life Ins. Co., 367 S.C.
 540, 544, 627 S.E.2d 687, 689 (2006).  Moreover:  

 The
 party seeking an injunction has the burden of demonstrating facts and
 circumstances warranting an injunction.  The remedy of an injunction is a
 drastic one and ought to be applied with caution.  In deciding whether to grant
 an injunction, the court must balance the benefit of an injunction to the
 plaintiff against the inconvenience and damage to the defendant, and grant an
 injunction which seems most consistent with justice and equity under the
 circumstances of the case. 

Id. (internal citations omitted).  A preliminary
 injunction is appropriate when the party seeking relief establishes that "(1)
 it would suffer irreparable harm if the injunction is not granted[,] (2) the
 party seeking injunction will likely succeed in the litigation[,] and (3) there
 is an inadequate remedy at law."  Id.
We
 affirm the circuit court's grant of summary judgment and denial of injunctive
 relief on the basis that Appellants failed to produce even a scintilla of
 evidence that they were irreparably harmed.  Appellants argue they are
 "qualified" to testify that Hoover's construction project has
 diminished the value of their respective properties.  Assuming their statement
 is correct, they failed to testify to any diminution in value.  Dempsey
 testified he had a gut feeling erosion from Hoover's lot negatively affected
 the value of his property.  Blue testified he also believed Hoover's activities
 devalued his property.  In addition, Dempsey testified the erosion from
 Hoover's property was damaging the water quality of the cove and adversely
 affecting his pleasure in using the lake.  Blue testified he believed the
 sediment eroded from Hoover's land would deposit in the cove that he and his
 neighbors had dredged some years before and would eventually limit his access
 to the lake.[3] 
 However, the record includes no testimony concerning the value of their properties
 prior to Hoover's construction project, the amount of depreciation they
 attributed to Hoover's construction activities, or any actual impact Hoover's
 project has had upon the enjoyment of their properties.  Moreover,  Dempsey did
 not present any evidence that Hoover's construction project adversely impacted
 the value of his property.  With not even a scintilla of evidence of any
 diminishment in property values, Appellants' testimonies failed to establish
 irreparable harm to their properties.  Accordingly, the circuit court did not
 abuse its discretion in denying them injunctive relief or in granting summary
 judgment to Hoover and the County.  
CONCLUSION
We find the evidence in the record supports a finding that Appellants
 lack standing to seek a declaratory judgment against Hoover and the County.  On
 that ground, we affirm the circuit court's conclusion that Appellants' claims
 for declaratory judgment are non-justiciable.  
In addition, we find the circuit court correctly denied Appellants
 injunctive relief because they failed to present even a scintilla of evidence demonstrating
 irreparable harm.  Accordingly, the decision of the circuit court is 
AFFIRMED.
FEW, C.J., SHORT, J., and CURETON, A.J., concur.  

[1] Judge James R. Barber denied the temporary
 injunction.    
[2] Judge L. Casey Manning granted summary judgment.  
[3] However, both Dempsey and Blue conceded they did not
 own the lake or the portion of the cove in which they contend sediment was
 accumulating.  Moreover, this testimony amounted to pure speculation.