**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

South Carolina Department of Social Services, Respondent,

v.

Allyssa N. Boulware, John A. Stafford, and Jonathan Boulware, Respondents,

and

Darryl Armstrong and Ruth Ann Armstrong and Edward Dalsing and Tammy Dalsing, Intervenors,

Of whom Edward Dalsing and Tammy Dalsing are the Appellants,

and

Darryl Armstrong and Ruth Ann Armstrong are Respondents.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2015-001571

Appeal From Union County
Coreen B. Khoury, Family Court Judge

Unpublished Opinion No. 2016-UP-220

Heard April 19, 2016 – Filed May 19, 2016

**AFFIRMED**

Larry Dale Dove, of Dove & Murphy Law Group, LLC, of Rock Hill, for Appellants.

Melinda Inman Butler, of The Butler Law Firm, of Union, for Respondents Darryl Armstrong and Ruth Ann Armstrong.

David E. Simpson, of South Carolina Department of Social Services, of Rock Hill, for Respondent South Carolina Department of Social Services.

Krystal L. Orr, of Krystal L. Orr, Esq., of Rock Hill, for the Guardian ad Litem.

**PER CURIAM:** Edward and Tammy Dalsing (collectively, Foster Parents) appeal the family court's order finding they did not have standing to file an adoption action and dismissing their action. On appeal, Foster Parents argue the family court erred in finding (1) they did not have standing when their standing had been opposed by the Department of Social Services (DSS) and allowed by the family court at a prior hearing, (2) they did not have statutory standing to file an adoption action, and (3) section 63-9-60(B) of the South Carolina Code (2010) requires DSS to approve the placement of a child for adoption by the particular family before that family has standing to file an adoption action. We affirm.

**FACTS/PROCEDURAL HISTORY**

In August 2013, when the minor child (Child) was approximately eight months old, law enforcement discovered an active methamphetamine lab outside of Child's parents' home. Law enforcement placed Child in emergency protective custody; that same day, DSS placed Child with Foster Parents. On November 20, 2013, the family court issued a merits order of removal. The order adopted a placement plan for Child's parents that required them to attend substance abuse treatment.

On February 19, 2014, the family court held the initial permanency planning hearing. At that time, Child's parents were not attending substance abuse treatment and had been arrested for possessing methamphetamine. The family court determined Child's permanent plan would be termination of parental rights (TPR) and adoption, concurrent with reunification.

After the initial permanency planning hearing, DSS determined Child's paternal aunt and uncle (Relatives) could provide a suitable home for Child and notified Foster Parents it planned to remove Child from their home. DSS also filed a motion for a second permanency planning hearing. On June 4, 2014, the court held a second permanency planning hearing. That same day, Foster Parents filed a motion to intervene in the DSS removal action, a private action to terminate the parental rights of Child's parents and adopt Child, and an administrative appeal of DSS's decision to remove Child from their home. Foster Parents also applied with the adoption unit of DSS to adopt Child.

During the second permanency planning hearing, DSS asked the family court to grant legal and physical custody of Child to Relatives and allow DSS to close its case. The Guardian ad Litem agreed with DSS. The family court declined to consider DSS's proposed permanent plan until after hearing Foster Parents' motion to intervene. Because Foster Parents did not provide the required ten-days' notice of their motion, the family court rescheduled the hearing. The family court found Child's current placement was safe, appropriate, and in her best interest, and it granted Relatives unsupervised weekend visitation with Child. The parties subsequently agreed Child would spend Monday through Thursday each week with Foster Parents and visit Relatives Friday through Sunday each week. The parties have been operating under that agreement since June 2014.

On July 16, 2014, the family court held a hearing on Foster Parents' motion to intervene. The family court issued an order on September 22, 2014, granting the motion and continuing the second permanency planning hearing.

On January 13, 2015, the family court held the second permanency planning hearing. In its March 11, 2015 order, the family court found Child's parents were not complying with their treatment plans, custody of Child would remain with DSS, and the permanent plan for Child would be TPR and adoption. The court scheduled a TPR hearing and indicated it would determine at that hearing how DSS's removal action and Foster Parents' adoption action would proceed.

The family court held a TPR hearing in March 2015. During the hearing, a DSS employee testified she believed Foster Parents and Relatives would provide suitable homes for Child, Child would adjust to both families, and both families were willing to adopt. Child's parents, who were both incarcerated, requested Child be placed with Relatives.

On June 16, 2015, the family court issued a final order terminating the parental rights of Child's parents. Relying on *Michael P. v. Greenville County Department of Social Services*, 385 S.C. 407, 684 S.E.2d 211 (Ct. App. 2011), and *Youngblood v. South Carolina Department of Social Services*, 402 S.C. 311, 741 S.E.2d 515, (2013), the family court found Foster Parents did not have standing to file an action for adoption and dismissed their adoption action. The family court stated, "[Relatives] and [Foster Parents] will have every right to present their case for adoption to [DSS's] adoption committee. However, there is no standing for a separate adoption action by either of these parties." The family court further found "[section] 63-9-60(B), when read in context with the full law regarding child protective services actions, requires that [DSS] approve the placement of a child, over whom they have custody, for adoption by that particular family before that family will have standing to proceed to adopt the child." The court ordered DSS would have custody of Child "with all rights of guardianship, placement, care and supervision, including the sole authority to consent to any adoption." This appeal followed.

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).

## LAW/ANALYSIS

Foster Parents first argue the issue of standing was before the family court at the July 16, 2014 hearing, and the family court implicitly affirmed their standing by allowing them to intervene in DSS's removal action. Thus, they contend "their [s]tanding to bring their action for adoption was ruled upon and is the law of the case." This argument is not preserved. *See Doe v. Roe*, 369 S.C. 351, 375-76, 631 S.E.2d 317, 330 (Ct. App. 2006) ("An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be

preserved for appellate review.").  Foster Parents did not raise this issue to the family court at the March 2015 hearing.  Thus, this argument is not preserved.

Foster Parents next argue they had standing under section 63-9-60 of the South Carolina Code (2010 & Supp. 2015).  They assert the family court's reliance on *Michael P.* and *Youngblood* in finding they did not have standing was misplaced.  Specifically, Foster Parents contend *Michael P.* is distinguishable because it dealt with the rights of former foster parents, and the *Michael P.* court's statutory interpretation of section 63-9-60 only applies to situations involving former foster parents.  Likewise, they argue *Youngblood* is distinguishable because DSS had "physically placed the child into the home of the selected adoptive family . . . for purposes of adoption" when the Youngbloods filed their adoption action.  Foster Parents assert section 63-9-60(B) does not apply here because DSS did not place Child for adoption; thus, they contend they had standing under section 63-9-60(A).  We disagree.

"Standing, a fundamental prerequisite to instituting an action, may exist by statute, through the principles of constitutional standing, or through the public importance exception."  *Youngblood*, 402 S.C. at 317, 741 S.E.2d at 518.  "Statutory standing exists, as the name implies, when a statute confers a right to sue on a party, and determining whether a statute confers standing is an exercise in statutory interpretation."  *Id.*  Section 63-9-60(A)(1) provides that "[a]ny South Carolina resident may petition the court to adopt a child."  Section 63-9-60(B) places the following limitation on section 63-9-60(A): "This section does not apply to a child placed by [DSS] or any agency under contract with the department for purposes of placing that child for adoption."

In *Michael P.*, this court held section 63-9-60 did not give former foster parents standing to file an adoption action.  385 S.C. at 415, 684 S.E.2d at 215.  This court then analyzed whether the foster parents had constitutional standing to proceed "by virtue of being [the c]hild's former foster parents" and concluded they did not have constitutional standing because "[a]ny rights [they] had with regard to [the c]hild ended after they chose not to administratively challenge the removal of [the c]hild from their care."  *Id.* at 415-18, 684 S.E.2d at 215-17.  This court reasoned, "[A]s former foster parents who declined to challenge DSS's removal of [the c]hild, [the former foster parents] do not have standing to initiate a private adoption action once [the c]hild was placed by DSS into a different pre-adoptive home."  *Id.* at 418, 684 S.E.2d at 217.

Subsequently, our supreme court reversed a family court's attempt to distinguish *Michael P.* from a situation in which the foster parents "informed DSS of their desire to adopt [the c]hild, received DSS's approval to adopt prior to the placement of [the c]hild, had their foster care contract terminated, and pursued an administrative challenge to [the c]hild's removal." *Youngblood*, 402 S.C. at 319, 741 S.E.2d at 519. The court reasoned, "Because [section 63-9-60(B)] does not permit any exceptions and plainly states that the section 63-9-60(A) grant of standing does not apply to children placed by DSS, the family court erred in grounding standing on section 63-9-60." *Id.* The court then determined foster parents do not have constitutional standing to challenge DSS's denial of consent to adopt, reasoning as follows:

> While the foster care relationship undoubtedly often results in emotional attachments between the foster parent and the foster child, the relationship is only a temporary, contractual relationship created by the State. . . . Accordingly, the foster parent relationship, absent statutory law to the contrary, is insufficient to create a legally protected interest in a child and therefore, does not create standing to petition to adopt.

*Id.* at 321-22, 741 S.E.2d at 520. Finally, the court determined the policy underlying the Children's Code supported its conclusions: "Permitting any person, or even just foster parents, to petition to adopt a child placed elsewhere for adoption by DSS directly contradicts the power and discretion given to DSS and undermines the goal of rapidity in permanently resolving children's placement issues." *Id.* at 322, 741 S.E.2d at 520-21.

Under the analysis set forth by our supreme court in *Youngblood*, we find the family court correctly determined section 63-9-60 did not give Foster Parents standing to file a petition to adopt Child. The plain language of section 63-9-60(B) states, "This section does not apply to a child placed by [DSS] or any agency under contract with the department for purposes of placing that child for adoption." This court has interpreted the language "to clarify that not just 'any South Carolina resident' can petition to adopt a child when the child has been placed by DSS in another home for the purposes of adoption," and our supreme court has affirmed that interpretation. *Michael P.*, 385 S.C. at 415, 684 S.E.2d at 215; *Youngblood*, 402 S.C. at 318-19, 741 S.E.2d at 519.

We disagree with Foster Parents' attempt to limit *Youngblood* to situations when foster parents file adoption actions after DSS has placed the child elsewhere for adoption. We do not believe the General Assembly intended to grant standing to foster parents who file adoption actions early in the process while foreclosing standing to foster parents who wait until after DSS has made an adoption placement decision. Such a finding would only encourage foster parents to file adoption petitions earlier in the process, which would contradict the underlying policy of the Children's Code and lead to an absurd result. Thus, we hold that— pursuant to *Youngblood*—foster parents do not have standing under section 63-9-60 to file an adoption petition, regardless of whether they are former or current foster parents or whether DSS has made an adoption placement decision.[1] This finding is consistent with the overall policy of the Children's Code, as expressed in *Youngblood*.

Foster Parents also point to other statutes that they contend support their standing to file an adoption action. Foster Parents first argue they have standing to file an adoption action under section 63-3-550 of the South Carolina Code (2010), which grants certain persons standing to institute proceedings regarding a neglected or delinquent child. Interpreting the plain language of this statute to grant Foster Parents standing to file an adoption action would contradict section 63-9-60(B), which limits who may file an adoption action. We find section 63-3-550, which is general in nature, is limited by section 63-9-60, which specifically addresses who may file an adoption action. *See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 319 S.C. 556, 558, 462 S.E.2d 858, 859 (1995) ("The general rule of statutory construction is that a specific statute prevails over a more general one."); *Mikell v. Cty. of Charleston*, 386 S.C. 153, 160, 687 S.E.2d 326, 330 (2009) ("[W]here two provisions deal with the same issue, one in a general and the other in a more specific and definite manner, the more specific prevails."). Because the General Assembly carved out an exclusion in section 63-9-60(B) to the broad grant of standing it conferred in 63-9-60(A), we find it did not intend section 63-3-550 to confer standing on the persons it excluded in section 63-9-60(B).

---

[1] This holding is not intended to foreclose foster parents from filing adoption petitions after DSS has placed a child with foster parents for adoption and consented to the adoption.

Foster Parents next contend they have standing to file an adoption action under section 63-11-720(A)(5) of the South Carolina Code (2010), which permits local foster care review boards "to advise foster parents of their right to petition the family court for [TPR] and for adoption and to encourage these foster parents to initiate these proceedings in an appropriate case."  Although this statute grants local foster care review boards the power to discuss rights with foster parents, it does not in itself create a right.  *See Youngblood*, 402 S.C. at 320, 741 S.E.2d at 519 ("[A] statutory directive to inform persons of their rights does not in itself create rights.").  Thus, this statute does not grant Foster Parents standing.

Foster Parents assert section 63-9-510 of the South Carolina Code (2010), which grants an adoption petitioner temporary custody of an adoptee, supports finding they have standing.  We find this statute does no more than grant a person who has filed a petition for adoption temporary custody of the child, require an investigation of the adoptive placement, and prohibit the child-placing agency from removing a child that has been placed for adoption without court order.  Thus, this statute does not grant Foster Parents standing to file an adoption action.

Foster Parents argue section 63-7-1700 of the South Carolina Code (Supp. 2015), which is the permanency planning statute, supports finding they have standing.  Foster Parents do not set forth an argument regarding why this section confers standing, and we could not find a basis for any.  Thus, this argument lacks merit.

Finally, Foster Parents contend Regulations 114-550(J) and 114-140 of the South Carolina Code of State Regulations (2012) and the foster parent contract support finding they have standing.  Even if the regulations and the foster parent contract could be construed to confer standing, they could not do so in contravention of section 63-9-60(B).  Further, our supreme court has determined the foster parent relationship is not sufficient to create constitutional standing.  *Youngblood*, 402 S.C. at 321-22, 741 S.E.2d at 520.  Due to our supreme court's determination that the foster parent relationship does not create a legally protected interest in a child, we find the regulations and the contract that forms that relationship cannot be construed as conferring standing.

Based on the foregoing, we find the family court properly determined Foster Parents did not have standing to file an adoption action.  Because this finding is dispositive, we decline to address whether the family court erred in finding section 63-9-60(B) requires DSS to approve the placement of a child for adoption by the particular family before that family has standing to file an adoption action.  *See*

*Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when a prior issue was dispositive); *Youngblood*, 402 S.C. at 323, 741 S.E.2d at 521 (finding the foster parents' lack of standing was dispositive and declining to reach the issue of DSS's consent).

**AFFIRMED.**

**WILLIAMS, LOCKEMY, and MCDONALD, JJ., concur.**