# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Department of Social Services,
Respondent,

v.

Allyssa N. Boulware, John A. Stafford, and Jonathan
Boulware, Respondents,

and

Darryl Armstrong and Ruth Ann Armstrong and Edward
Dalsing and Tammy Dalsing, Intervenors,

Of whom Edward Dalsing and Tammy Dalsing are
Petitioners,

and

Darryl Armstrong and Ruth Ann Armstrong are
Respondents.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2016-001625

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Union County
Coreen B. Khoury, Family Court Judge

———————

Opinion No. 27759
Heard May 2, 2017 – Filed January 3, 2018

**REVERSED AND REMANDED**

Larry Dale Dove, of Dove Law Group, LLC, of Rock Hill, for Petitioners.

Ernest M. Spong III, of Winnsboro, Alexandria Marie Wolf, of Callie A. Charles, LLC, of Spartanburg, Melinda Inman Butler, of The Butler Law Firm, of Union, and David E. Simpson, of Rock Hill, and Shawn L. Reeves, of Columbia, all for Respondents.

**JUSTICE JAMES:** In this case, the Court must decide whether Petitioners Edward and Tammy Dalsing have standing to pursue a private action to adopt a child who has been placed in their foster care by the South Carolina Department of Social Services (DSS). The family court found Petitioners do not have standing, and the court of appeals affirmed. *S.C. Dep't of Soc. Servs. v. Boulware*, Op. No. 2016-UP-220 (S.C. Ct. App. filed May 19, 2016). We reverse and remand to the family court, as we conclude Petitioners have standing to pursue a private adoption under the facts of this case.

## FACTUAL AND PROCEDURAL HISTORY

On August 27, 2013,[1] law enforcement took the minor child (Child) into emergency protective custody after discovering an active methamphetamine lab outside the home where Child resided with Allyssa and Jonathan Boulware. Child was sunburned, had several insect bites, suffered from severe diaper rash, and tested positive for methamphetamine, cocaine, and marijuana. DSS placed Child in foster care with Petitioners on the same day and then commenced an abuse and neglect removal action. Child's biological parents are Allyssa Boulware and John Stafford (Parents), and Child's legal father by marriage is Jonathan Boulware.

After a hearing on October 9, 2013, the family court issued an order finding a permanent plan of reunification with Parents was in the best interest of Child and

---

[1] The dates referenced in this opinion are primarily for temporal context and are of no substantive import.

adopting a treatment plan requiring Parents to attend parenting classes and substance abuse counseling. In February 2014, the family court held the initial permanency planning hearing and discovered Parents were not attending substance abuse counseling, were not supporting Child, and had been arrested for possession of methamphetamine. The family court approved DSS's recommendation of a permanent plan of termination of parental rights (TPR) and adoption, with a concurrent plan of reunification with Parents. In the meantime, the Foster Care Review Board issued its report recommending TPR and adoption within six months.

The instant controversy began when DSS and Parents reached an agreement for Child to be placed with relatives Darryl and Ruth Ann Armstrong (Aunt and Uncle) in order to give Parents more time to work on the treatment plan. The proposed placement with Aunt and Uncle was not an adoptive placement. DSS intended to close its case after Parents completed the treatment plan. On May 31, 2014, DSS notified Petitioners of its intent to remove Child from their home and place Child with Aunt and Uncle. Petitioners immediately moved to intervene in DSS's removal action and commenced a private TPR and adoption action.[2] The family court held a second permanency planning hearing on June 4, 2014, but declined to rule on DSS's new permanent plan of relative placement with Aunt and Uncle until the court ruled on Petitioners' motion to intervene.[3]

In September 2014, the family court granted Petitioners' motion to intervene and granted their request for a full evidentiary hearing on DSS's motion to change the permanent plan to a plan of relative placement with Aunt and Uncle. Aunt and Uncle were added as parties to DSS's action. At a January 2015 permanency planning hearing, DSS changed its treatment plan recommendation to TPR and adoption. The family court approved that plan and scheduled a TPR hearing for March 2015. The family court also ordered Petitioners and Aunt and Uncle to be

_____

[2] Petitioners also filed an administrative appeal of DSS's decision to remove Child from their home and an application with the DSS Adoption Unit to adopt Child. These filings are not relevant to this appeal.

[3] The family court ruled at this hearing that Child should remain with Petitioners until further hearing but permitted Aunt and Uncle unsupervised weekend visitation with Child. The parties subsequently agreed Child would spend Monday through Thursday each week with Petitioners and visit Aunt and Uncle Friday through Sunday each week. These living arrangements are still in effect.

named parties in the DSS TPR action.

After the March 2015 hearing, the family court terminated the parental rights of Parents. The family court also dismissed Petitioners' adoption action on the basis Petitioners did not have standing to pursue a private action for adoption of a child in DSS custody, citing *Michael P. v. Greenville County Department of Social Services*, 385 S.C. 407, 684 S.E.2d 211 (Ct. App. 2009), and *Youngblood v. South Carolina Department of Social Services*, 402 S.C. 311, 741 S.E.2d 515 (2013). Relying upon *Youngblood*, the family court concluded "the entire legislative scheme should be allowed to work without interference from foster parents who are there to take care of the child, not to generate an adoption for themselves." The court noted Petitioners and Aunt and Uncle could present their case for adoption to the DSS adoption committee but ruled none had standing to pursue a separate adoption action in the family court. The family court continued:

> [T]he terminology in S.C. Code Ann. § 63-9-60 (B), when read in context with the full law regarding child protective services actions, requires that the South Carolina Department of Social Services approve the placement of a child, over whom they have custody, for adoption by that particular family before that family will have standing to proceed to adopt the child.

The family court granted custody of Child to DSS "with all rights of guardianship, placement, care and supervision, including the sole authority to consent to any adoption . . . ." This appeal followed.

The court of appeals affirmed the family court in an unpublished per curiam opinion. *S.C. Dep't of Soc. Servs. v. Boulware*, Op. No. 2016-UP-220 (S.C. Ct. App. filed May 19, 2016). Relying on *Youngblood*, the court of appeals held "foster parents do not have standing under section 63-9-60 to file an adoption petition, regardless of whether they are former or current foster parents or whether DSS has made an adoption placement decision." *Id.* The court stated its decision was consistent "with the overall policy of the Children's Code" and concluded the General Assembly did not intend "to grant standing to foster parents who file adoption actions early in the process while foreclosing standing to foster parents who wait until after DSS has made an adoption placement decision." *Id.* We granted Petitioners a writ of certiorari to review the court of appeals' decision.

**STANDARD OF REVIEW**

In appeals from the family court, this Court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Questions of statutory interpretation are "questions of law, which are subject to *de novo* review and which we are free to decide without any deference to the court below." *State v. Whitner*, 399 S.C. 547, 552, 732 S.E.2d 861, 863 (2012).

## APPLICABLE LAW AND ANALYSIS

### A. Statutory Construction

"Standing refers to a party's right to make a legal claim or seek judicial enforcement of a duty or right." *Michael P.*, 385 S.C. at 415, 684 S.E.2d at 215. Prior to commencing an action, a party must possess standing either "by statute, through the principles of constitutional standing, or through the public importance exception." *Youngblood*, 402 S.C. at 317, 741 S.E.2d at 518. Statutory standing exists "when a statute confers a right to sue on a party, and determining whether a statute confers standing is an exercise in statutory interpretation."[4] *Id.*

Adoption proceedings are conducted pursuant to the South Carolina Adoption Act. *See* S.C. Code Ann. §§ 63-9-10 to -2290 (2010 & Supp. 2017).[5] This case turns upon the interpretation of section 63-9-60, which provides:

> (A)(1) Any South Carolina resident may petition the court to adopt a child.

---

[4] In *Youngblood*, we held foster parents did not have constitutional standing. 402 S.C. at 321–22, 741 S.E.2d at 520 ("[T]he foster parent relationship, absent statutory law to the contrary, is insufficient to create a legally protected interest in a child and therefore, does not create [constitutional] standing to petition to adopt."). While a party may also acquire standing through the public importance exception, Petitioners do not raise the exception in this action.

[5] "The adoption of a child was a proceeding unknown to the common law." *Hucks v. Dolan*, 288 S.C. 468, 470, 343 S.E.2d 613, 614 (1986). As such, "[a]doption exists in this state only by virtue of statutory authority which expressly prescribes the conditions under which an adoption may legally be effected." *Id.* "Since the right of adoption in South Carolina is not a natural right but wholly statutory, it must be strictly construed." *Id.*

. . . .

      (B) This section does not apply to a child placed by the State Department of Social Services or any agency under contract with the department for purposes of placing that child for adoption.

S.C. Code Ann. § 63-9-60 (2010 & Supp. 2017).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000); *Michael P.*, 385 S.C. at 414, 684 S.E.2d at 215. "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581 (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed. 1992)). Appellate courts must follow a statute's plain and unambiguous language, and when the language is clear, "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.* This Court looks beyond a statute's plain language only when applying the words literally would lead to a result so patently absurd that the General Assembly could not have intended it. *Cabiness v. Town of James Island*, 393 S.C. 176, 192, 712 S.E.2d 416, 425 (2011).

## B. *Youngblood* and *Michael P.*

In *Youngblood*, we addressed the issue of whether foster parents can petition to adopt a child after DSS has placed the child elsewhere for adoption. We concluded the verb "place" is used in section 63-9-60(B) and by DSS to mean "the selection of an adoptive family," even when the child was not yet physically placed in the adoptive home. *Youngblood*, 402 S.C. at 314 n.2, 741 S.E.2d at 516 n.2.

Before reviewing *Youngblood*, we must first briefly review the court of appeals' holding in *Michael P.* In *Michael P.*, DSS removed a child from his mother and placed the child in foster care. 385 S.C. at 410, 684 S.E.2d at 212. When DSS asked the foster parents if they wanted to adopt the child, the foster parents declined. *Id.* DSS then placed the child with another family for adoption. *Id.* The former foster parents did not approve of the proposed adoptive family and petitioned to adopt the child, asserting they had standing to petition for adoption pursuant to section 63-9-60. *Id.* at 410–12, 684 S.E.2d at 212–13. The court of appeals disagreed:

> We find the plain meaning of the statute and the intent of the Legislature when enacting subsection (B) of 63-9-60 was to clarify that not just "any South Carolina resident" can petition to adopt a child *when the child has been placed by DSS in another home for the purposes of adoption. [The former foster parents] do not have standing based on this statute because [the child] was placed by DSS in [another] home for purposes of adoption.*

*Id.* at 415, 684 S.E.2d at 215 (emphasis added).

In *Youngblood*, DSS removed a child from her biological parents and placed her with foster parents. 402 S.C. at 313, 741 S.E.2d at 516. DSS then removed the child from the foster parents' home and placed the child for adoption with a different family. *Id.* at 314, 741 S.E.2d at 516. The former foster parents then petitioned to adopt the child, claiming they had standing under section 63-9-60. *Id.* We disagreed, noting, "Thus, while section 63-9-60(A) broadly grants standing to 'any South Carolina resident,' section 63-9-60(B) makes that grant of standing inapplicable *to a child placed for adoption by DSS.*" *Id.* at 318, 741 S.E.2d at 518 (emphasis added) (citing *Michael P.*, 385 S.C. at 415, 684 S.E.2d at 215).

In the instant case, DSS contends our holding in *Youngblood* compels the conclusion that the foster parent relationship is temporary and is insufficient to create standing to petition to adopt. We indeed so held in *Youngblood*, but did so only when addressing the narrow question of whether the foster parent relationship *in and of itself* creates standing to petition to adopt. 402 S.C. at 322, 741 S.E.2d at 520. The foster parent relationship itself does not create standing for Petitioners, but that reality does not foreclose allowing standing under section 63-9-60 when the "broad grant" of standing has not been closed by the placement of a child elsewhere for adoption.

Here, the court of appeals concluded our holding in *Youngblood* should not be limited to situations in which former foster parents petition for adoption after DSS has placed the child elsewhere for adoption. The court of appeals found the General Assembly did not intend to grant standing to foster parents who petition for adoption early in the process but at the same time foreclose standing to foster parents who wait until after DSS has made an adoption placement decision. The court of appeals held foster parents do not have standing to petition for adoption under section 63-9-

60, regardless of whether they are former or current foster parents or whether DSS has made an adoption placement decision.

Petitioners argue the court of appeals' holding exceeds the scope of our decision in *Youngblood*. Petitioners contend they have standing under section 63-9-60 because they are residents of South Carolina and because they brought their adoption action (1) before DSS placed Child for adoption but while Child was placed in foster care with Petitioners and (2) before DSS was vested with authority to consent to an adoption. We agree. The reasoning employed by the court of appeals would undermine the broad grant of standing we recognized in *Youngblood* and would rewrite section 63-9-60(B) to (1) read that once DSS acquires custody of a child, that child has been "placed," and (2) require that DSS approve the adoptive placement of a child with a particular family before that family has standing to petition for adoption. Neither of these interpretations is supported by a plain reading of the statute.

## C.  Respondents' Claim of Absurd Result

We note the settled rule that courts may disregard the plain meaning of a statute if the result is so patently absurd the General Assembly could not have intended it. *Cabiness*, 393 S.C. at 192, 712 S.E.2d at 425. The court of appeals found that granting standing to Petitioners would yield the absurd result of encouraging foster parents to prematurely petition for adoption, thereby contradicting the underlying policy of the Children's Code.[6] Respondents argue that granting standing to Petitioners would subvert the policy behind the South Carolina Adoption Act to provide permanency for children after a determination there will be no reunification with the biological parents.

We disagree with both contentions. First, section 63-1-20(A) of the Children's Code (2010) provides, "A children's policy is hereby established for this State." Section 63-1-20(D) provides in pertinent part, "When children must be permanently removed from their homes, they *shall be placed in adoptive homes* so that they may become members of a family by legal adoption or, absent that possibility, other permanent settings." (emphasis added). This provision reveals the legislature's intent and clear mandate that adoption is the first preferred option if the family court determines a child will not be reunited with his or her biological parents. Here, Child was removed from her biological parents, and the family court ruled their parental

---

[6] The Children's Code is codified in Title 63 of the South Carolina Code (2010 & Supp. 2017).

rights should be terminated. As reunification has been ruled out by the family court, the South Carolina Adoption Act clearly mandates adoption as the preferred permanent setting for Child. Instead, DSS seeks nonadoptive relative placement with Aunt and Uncle, which can hardly be considered the path to a permanent setting for Child and is contrary to the clear mandate of section 63-1-20(D).

Likewise, a review of section 63-11-720(A) of the Children's Code (Supp. 2017) defeats the contention that a finding of standing is an absurd result. This code section sets forth the functions and powers of local foster care review boards. Section 63-11-720(A)(5) provides that one such function and power is to advise foster parents of their right to "*petition the family court*" for TPR and for adoption to "encourage . . . foster parents to initiate these proceedings in an appropriate case when it has been determined by the local review board that return to the natural parent is not in the best interest of the child." S.C. Code Ann. § 63-11-720(A)(5) (Supp. 2017) (emphasis added).

While section 63-11-720(A)(5) does not create standing for Petitioners, it does reveal the General Assembly's intent that Petitioners could initiate TPR and adoption proceedings in the family court once the local foster care review board determined it would not be in Child's best interest to be returned to Parents. Here, on January 21, 2014, the local board recommended a plan of TPR and adoption after Child had been in Petitioners' care for almost six months. As the General Assembly contemplated, Petitioners petitioned the family court for TPR and adoption.

## D. Contract Signed by DSS and Petitioners

When Child was placed in foster care with Petitioners, DSS and Petitioners signed a form contract that is customarily entered into by DSS and foster parents when a child is placed in foster care. The contract provides, *inter alia*, that Petitioners desire to temporarily care for Child, that Petitioners agree to accept Child for an indefinite time, and that if Child becomes legally free for adoption and Petitioners desire to adopt Child, a DSS placement committee will determine the adoptive placement that would be in Child's best interest. Aunt and Uncle concede Child had not been legally freed for adoption. Still, they contend Petitioners' sole rights to Child derive from this contract and that this contract does not create any greater right in Petitioners to adopt Child.[7] We agree the contract does not *create*

---

[7] In their brief, Aunt and Uncle quote with emphasis a passage purporting to be from a form DSS foster parent contract. Similar language is found in the contract actually signed by Petitioners and DSS.

any right in Petitioners to adopt Child.  However, nothing in the contract *prohibits* Petitioners from petitioning the family court for adoption provided they have standing under section 63-9-60.

We acknowledged in *Youngblood* that the foster care relationship is a temporary and contractual relationship created by the State, and we further noted foster care is "a temporary living arrangement . . . utilized while permanent placement plans are being formulated for the involved children."  402 S.C. at 321–22, 741 S.E.2d at 520 (quoting 10 S.C. Code Ann. Regs. 114-550(A)(1) (2012)). Accordingly, we held "the foster parent relationship, absent statutory law to the contrary, is insufficient to create a legally protected interest in a child and therefore, does not create standing to petition to adopt."  *Id.* at 322, 741 S.E.2d at 520.  It is indeed settled that the foster care relationship is temporary and does not in and of itself create standing to commence a private adoption action.  However, this does *not* foreclose the existence of standing for foster parents under section 63-9-60, provided the foster parents reside in South Carolina, and provided the foster child has not been placed for adoption by DSS (or by agency under contract with DSS).

## CONCLUSION

The issue in this case is not whether Petitioners signed a contract or whether the foster relationship creates standing.  Likewise, whether a person who commences a private adoption action under the attendant circumstances is a current foster parent or a former foster parent is of no consequence to the issue of standing under section 63-9-60.  To attain standing, the person who petitions for adoption must first simply be a resident of South Carolina.  Second, the child must not have been placed by DSS for adoption.  Again, in *Youngblood*, we noted "while section 63-9-60(A) broadly grants standing to 'any South Carolina resident,' section 63-9-60(B) makes that grant of standing inapplicable to a child *placed for adoption* by DSS."  402 S.C. at 318, 741 S.E.2d at 518 (emphasis added).  In *Youngblood*, our interpretation of section 63-9-60 and our holding did not turn upon whether the Youngbloods were current or former foster parents, but rather upon whether the child had or had not been placed for adoption by DSS.[8]

---

[8] At oral argument, DSS asserted the word "placed" as used in section 63-9-60(B) simply refers to when a child is initially placed in DSS custody.  At oral argument, Aunt and Uncle asserted the word "placed" refers to when a child is placed in the foster parents' home, regardless of whether the placement is for adoption.  These

In sum, *Youngblood* and section 63-9-60 compel a simple analysis. Petitioners are South Carolina residents. When Petitioners commenced their adoption action, Child had not been placed for adoption by DSS. The plain meaning of section 63-9-60 affords standing to Petitioners. *See also Michael P.*, 385 S.C. at 415, 684 S.E.2d at 215 (holding former foster parents did not have standing to adopt under section 63-9-60 *because the child had been placed by DSS for adoption*).

Our holding aligns with a plain reading of section 63-9-60, is in accord with the purpose of the South Carolina Adoption Act to establish fair and reasonable procedures for adoption, and does not impede the policy behind the South Carolina Children's Code to provide permanency for children after a determination there will be no reunification with the biological parents. While allowing Petitioners standing pursuant to the plain meaning of section 63-9-60 may not be a result which DSS prefers, it is not a result so absurd that the General Assembly could not have intended it. We acknowledge the solemn authority entrusted to DSS to safeguard the children of this State and to ensure rapidity in permanently resolving placement issues. Our holding solely answers the question of Petitioners' standing pursuant to section 63-9-60. We do not decide today who, if anyone, Child's adoptive parents will be—we simply recognize Petitioners' standing to ask.

We hold Petitioners have standing to pursue a private action for adoption pursuant to section 63-9-60 because Petitioners are residents of South Carolina and because, at the time Petitioners commenced their adoption action, Child had not yet been placed for adoption by DSS. Accordingly, we reverse the decision of the court of appeals and remand to the family court to proceed with Petitioners' action for adoption.[9]

**REVERSED AND REMANDED.**

**BEATTY, C.J. and FEW, J., concur. HEARN, J., concurring in a separate opinion in which KITTREDGE, J., concurs.**

---

interpretations do not comport with either a plain reading of the statute or our interpretation of the word "placed" in *Youngblood*.

[9] Because this issue is dispositive of the appeal, we decline to address Petitioners' remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing this Court need not address remaining issues when disposition of prior issue is dispositive of the appeal).

**JUSTICE HEARN:**  I concur in the analysis and result reached by the majority but write separately to express my belief that the General Assembly did not intend to grant standing to all South Carolina residents to file an action for the adoption of a child who has been placed in DSS custody.  I further believe the court of appeals reached a commonsensical result in construing Section 63-9-60(B) (2010 & Supp. 2017), when it stated:   "We do not believe the General Assembly intended to grant standing to foster parents who file adoption actions early in the process while foreclosing standing to foster parents who wait until after DSS has made an adoption placement decision."  *S.C. Dep't of Soc. Servs. v. Boulware*, Op. No. 2016-UP-220 (S.C. Ct. App. filed May 19, 2016).   However reasonable this construction may be, it is at odds with the clear language of Section 63-9-60(B).  Moreover, I agree with the majority that the result which emanates from employing the plain meaning of the words of the statute is not necessarily absurd; nevertheless, it is an anomaly that I doubt the General Assembly contemplated.  I join the majority opinion because the result is not only warranted by the clear wording of the statute, it is also in this child's best interest.   Yet I am concerned that foster parents and others who are anxious to adopt a child will hail our decision today as a green light to file an adoption action when a child is taken into protective custody--at a time when DSS is working to fulfill its statutory mandate for reunification.   Such actions will burden our family court system and may not always produce results which are best for the child and his or her family.  However, finding absurd results in order to produce a more logical and orderly result is not the prerogative of this Court, and I trust the General Assembly will act to change the statute if the current plain language does not reflect its true intent.

**KITTREDGE, J., concurs.**