# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Opternative, Inc., Appellant,

v.

South Carolina Board of Medical Examiners and the South Carolina Department of Labor, Licensing & Regulation, Respondents,

And South Carolina Optometric Physicians Association, Respondent.

Appellate Case No. 2018-000326

---

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 5818
Heard November 2, 2020 – Filed May 5, 2021

---

## REVERSED AND REMANDED

---

Miles Edward Coleman, of Greenville, and William C. Wood, Jr., of Columbia, both of Nelson Mullins Riley & Scarborough, LLP; and Robert J. McNamara and Joshua A. Windham, of the Institute for Justice, of Arlington, Virginia, admitted pro hac vice, all for Appellant.

Eugene Hamilton Matthews, of Richardson Plowden & Robinson, P.A., of Columbia, for Respondents South Carolina Board of Medical Examiners and South Carolina Department of Labor, Licensing and Regulation.

Kirby Darr Shealy, III, of Adams and Reese, LLP, of Columbia, for Respondent South Carolina Optometric Physicians Association.

———————

**WILLIAMS, J.:** This appeal arises from Opternative, Inc.'s (Opternative) action challenging the constitutionality of sections 40-24-10 and 40-24-20 of the South Carolina Code (Supp. 2020). The trial court found Opternative lacked standing to challenge the statutes and granted summary judgment to the South Carolina Department of Labor, Licensing and Regulation (the Department), the South Carolina Board of Medical Examiners (the Board), and the South Carolina Optometric Physicians Association (the Association) (collectively, Respondents). We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Opternative developed technology (Technology) that would allow an individual to determine the refractive error[1] of his or her eyesight without going to an optometrist or ophthalmologist for an examination. With the Technology, the individual answers a series of questions relating to his or her medical history and uses a computer and a smart phone to complete the examination to determine his or her refractive error. The results are then reviewed by a South Carolina-licensed ophthalmologist, and if the ophthalmologist determines the individual needs a prescription for corrective lenses, the ophthalmologist writes a prescription. According to Opternative, the Technology is available to the public for free and Opternative only charges the patient for the ophthalmologist's review.

In 2016, the General Assembly enacted the Eye Care Consumer Protection Law (the Act). *See* §§ 40-24-10 to -20. Following the Act's implementation, ophthalmologists stopped using the Technology, believing the Act prohibited its use. Opternative filed an action against the Department and the Board, seeking a declaratory judgment finding the Act violated its rights under the South Carolina Constitution and an injunction prohibiting enforcement of the Act. The

---

[1] The refractive error relates to how light bends within the eye. The patient's refractive error can be determined by different methods, but one method involves asking the patient whether certain lenses placed in front of his or her eye make a projected image better or worse.

Association moved to intervene, and the trial court granted the motion following Opternative's conditional consent.[2]

Opternative submitted two affidavits to the trial court—one by Daniel Bodde, its Chief Marketing Officer, and one by Doctor Edward Chaum, an ophthalmologist. Bodde stated in his affidavit that Opternative was successfully operating in South Carolina to provide prescriptions to state residents through an ophthalmologist. But, Opternative's operations in the state ended once the Act was passed because ophthalmologists stopped using its Technology to provide prescriptions. Bodde stated Opternative was in contact with ophthalmologists who would resume use of the Technology to write corrective-lens prescriptions if the Act was struck down. In his affidavit, Dr. Chaum stated he used the Technology to write prescriptions for South Carolina residents but stopped doing so when the Act went into effect.

The Department and the Board moved for summary judgment, asserting Opternative lacked standing and the Act was constitutional. Opternative opposed the motion and requested summary judgment in its favor. The Association filed a memorandum of law joining the Department and the Board's motion and providing additional arguments regarding the Act's validity. Following a hearing on the motions, the trial court granted summary judgment in favor of Respondents, finding Opternative lacked standing because the Act only prohibited Opternative's chosen business model. The court expressly declined to address the issue of the Act's validity. This appeal followed.

**ISSUE ON APPEAL**

Did the trial court err in finding that Opternative lacked standing to challenge the validity of the Act?

**STANDARD OF REVIEW**

This court reviews a grant of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP. *Loflin v. BMP Dev., LP*, 427 S.C. 580, 588, 832 S.E.2d 294, 298 (Ct. App. 2019). Pursuant to Rule 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

_____

[2] The Association worked with legislators to draft the Act and lobbied for the Act. The Association moved to intervene because optometrists are subject to the Act's provisions.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009). To withstand a summary judgment motion in cases applying a heightened burden of proof, the nonmoving party must provide "more than a mere scintilla of evidence." *Id.* at 330–31, 673 S.E.2d at 803. "[A] scintilla is a perceptible amount. There still must be a verifiable spark, not something conjured by shadows." *Gibson v. Epting*, 426 S.C. 346, 352, 827 S.E.2d 178, 181 (Ct. App. 2019). Because a statute will not be declared unconstitutional unless it is clearly proven beyond a reasonable doubt, more than a mere scintilla of evidence is required to defeat a summary judgment motion in cases questioning a statute's validity. *See Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999) (per curiam) ("A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt.").

## LAW/ANALYSIS

Under South Carolina law, standing can be established in three ways: (1) by statute, (2) by constitutional standing, and (3) under the public importance exception. *Bodman v. State*, 403 S.C. 60, 66–67, 742 S.E.2d 363, 366 (2013). Opternative's arguments at trial and on appeal are limited to constitutional standing. Accordingly, we review standing only under this theory.

Constitutional standing consists of three elements: "(1) the plaintiff must have suffered an 'injury in fact;' (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be 'redressed by a favorable decision.'" *Joseph v. S.C. Dep't of Labor, Licensing & Regulation*, 417 S.C. 436, 449, 790 S.E.2d 763, 770 (2016) (plurality opinion) (quoting *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 601, 550 S.E.2d 287, 291 (2001)). "A party seeking to establish standing carries the burden of demonstrating each element." *Id.*

Opternative argues the trial court erred in granting Respondents summary judgment. Specifically, Opternative asserts it satisfied the three elements of standing and therefore requests that this court remand the matter for a determination on its motion for summary judgment as to the Act's constitutionality.

## I.    Injury in Fact

Opternative argues the trial court erred in finding it had not suffered an injury as a result of the Act's enactment because the Act only prohibited Opternative's chosen business model.  We agree.

Opternative asserts it was injured when its operations in South Carolina ended and that the Act was the source of its injury because the Act prohibits ophthalmologists from using its Technology to prescribe corrective lenses.  Because this theory of injury depends on an interpretation of the Act, we must first interpret the Act to determine whether it actually causes Opternative an injury in fact.  *See Jowers v. S.C. Dep't of Health & Envtl. Control*, 423 S.C. 343, 354, 815 S.E.2d 446, 452 (2018).  Statutory interpretation is an issue of law that this court reviews de novo. *S.C. Dep't of Soc. Servs. v. Boulware*, 422 S.C. 1, 6, 809 S.E.2d 223, 226 (2018).

The Act requires that a prescription written by an optometrist or an ophthalmologist to correct refractive error be "based on an eye examination." § 40-24-10(6).  "Eye examination" is defined as an assessment of the patient's ocular health and must include an assessment of the patient's "visual status."[3] § 40-24-10(3).  The patient's visual status assessment cannot "be based solely on objective refractive data or information generated by an automated testing device . . . to provide a medical diagnosis or to establish a refractive error for a patient as part of an eye examination."  § 40-24-10(9).  Additionally, the Act states a prescription "may not be based solely on the refractive eye error of the human eye or be generated by a kiosk."  § 40-24-20(C).  The Act defines "kiosk" as "automated equipment or an automated application, which is designed to be used on a phone, computer, or Internet-based device that can be used in person or remotely to provide refractive data or information."  § 40-24-10(4).

We agree with the trial court that the Act prohibits Opternative's current business model.  Under its model, ophthalmologists review only the information provided by the Technology and do not interact with the patient or conduct any other type of examination or assessment before writing a prescription.  Because a prescription cannot be based solely on the patient's refractive error but also requires medical findings regarding the patient's ocular health and visual status, the Act precludes

---

[3] Doctor Michael W. Zolman, a South Carolina-licensed optometrist, stated in his deposition that "ocular health" is an anatomical assessment and "visual status" is an assessment of visual accuracy, accommodation of amplitudes, and ocular alignment.

ophthalmologists from relying solely on Opternative's Technology when issuing prescriptions. *See* § 40-24-10(3).

However, we find the trial court erred in ruling the Act's prohibition of Opternative's chosen business model was not an injury in fact. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent'" rather than conjectural or hypothetical. *ATC S., Inc. v. Charleston County*, 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An economic interest is a legally protected interest. *See Toussaint v. State Bd. of Med. Exam'rs*, 285 S.C. 266, 268, 329 S.E.2d 433, 434–35 (1985) ("[The a]ppellant's 'interest in his own reputation and in his economic well-being' clearly give him a personal stake in the outcome of the controversy." (quoting *Jenkins v. McKeithen*, 395 U.S. 411, 423 (1969))).

In *Joseph*, our supreme court held a physical therapist and two doctors suffered an injury and had standing to challenge a particular law. 417 S.C. at 449–50, 790 S.E.2d at 770. The law precluded physical therapists from being employed by a doctor and treating patients referred to them by the doctor. *Id.* at 443–44, 790 S.E.2d at 766–67. However, the law did not prohibit doctors from employing other healthcare professionals and referring patients to them. *Id.* at 442, 790 S.E.2d at 766. The law also did not prohibit a physical therapist from being employed in a physical therapist group practice and treating patients referred by another therapist in the practice. *Id.* at 445, 790 S.E.2d at 767–68. The court held this was sufficient to find the appellants had suffered an injury because the law prohibited the appellants from pursuing their profession under the arrangement they desired. *Id.* at 449–50, 790 S.E.2d at 770.

We find Opternative suffered an injury in fact. Opternative's affidavits provide evidence that Opternative suffered an actual and particularized injury: Opternative previously conducted business in South Carolina, but it no longer does. Similar to the physical therapists and physicians in *Joseph*, Opternative is prohibited from engaging in business under the business model it desires. *See id.* Pursuant to *Joseph*, the fact that the Act would allow Opternative to operate under a different model does not eliminate Opternative's ability to challenge the Act. *See id.* Although the State can regulate businesses and business models in pursuit of protecting the public, those affected by such laws have the right to challenge their validity. *Compare Denene, Inc. v. City of Charleston*, 359 S.C. 85, 97, 596 S.E.2d 917, 923 (2004) (stating the government can regulate and restrict businesses in pursuit of preserving public health, safety, and welfare), *with Joytime*, 338 S.C. at

639–40, 528 S.E.2d at 649–50 (finding the appellant had standing to challenge a statute regulating its business). Therefore, we hold the trial court erred in finding Opternative had not suffered an injury in fact because it could change its business model to comply with the Act.

## II.    Causation

Opternative argues the trial court erred in finding there was no causal connection between its injury and the Act. We agree.

The second element of standing is establishing a causal connection between the injury and the challenged conduct. *See Joseph*, 417 S.C. at 467, 790 S.E.2d at 779. A causal connection exists if the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Sea Pines*, 345 S.C. at 601, 550 S.E.2d at 291 (omissions and alterations in original) (quoting *Lujan*, 504 U.S. at 560). Establishing a "but for" causal connection or showing a substantial likelihood that the challenged action caused the injury is sufficient. *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 74–78 (1978); *see also Bailey v. S.C. Dep't of Health & Envtl. Control*, 388 S.C. 1, 7, 693 S.E.2d 426, 429 (Ct. App. 2010) (finding no causal connection existed when the conduct causing the appellant's alleged injury existed before the challenged state action).

We find the trial court erred in holding there was no causal connection between Opternative's injury and the Act. The trial court reasoned Opternative's injury was caused by ophthalmologists declining to use the Technology, which was "an act from a third party not before the court." We disagree. The ophthalmologists' decision to stop using the Technology was not an independent action because it is fairly traceable to the Act. *See Sea Pines*, 345 S.C. at 601, 550 S.E.2d at 291 ("[T]he injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . . .'" (first omission and second alteration in original) (quoting *Lujan*, 504 U.S. at 560)). Opternative's affidavits presented evidence that ophthalmologists stopped using the Technology because the Act prohibited Opternative's business model. *See Joseph*, 417 S.C. at 449–50, 790 S.E.2d at 770 (stating there was a causal connection between the doctors and physical therapist's injury of not being able to work in an employer-employee arrangement and the laws precluding such an employment arrangement). The record does not contain any evidence that ophthalmologists stopped using the Technology for any other reason. Accordingly, the evidence, when viewed in the light most favorable to Opternative, shows a "substantial likelihood" that the Act caused Opternative's

injury.  *See Duke Power*, 438 U.S. at 77 (stating a showing of substantial likelihood satisfies the causal connection requirement); *cf. Bailey*, 388 S.C. at 7, 693 S.E.2d at 429 (finding no causal connection existed when the conduct causing the appellant's alleged injury existed before the challenged state action).

The Department and the Board assert Opternative also failed to show a causal connection because (1) they have not had an occasion to enforce the Act, (2) they do not have any authority over Opternative, and (3) Opternative has not complained of any conduct by the Department or the Board.  *See Sea Pines*, 345 S.C. at 601, 550 S.E.2d at 291 ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . . .'" (first omission and second alteration in original) (quoting *Lujan*, 504 U.S. at 560)).  We disagree.

The Department and the Board are responsible for enforcing violations of the Act. *See* S.C. Code Ann. § 40-1-40(B) (2011) (stating the Department oversees the Board); S.C. Code Ann. § 40-47-10(I) (2011 & Supp. 2020) (providing the Board with the powers and duties of regulating the practice of medicine); S.C. Code Ann. §40-47-110 (2011 & Supp. 2020) (providing the Board with the authority to take disciplinary action for misconduct by licensed professionals); § 40-24-20(D) (stating violation of the Act constitutes misconduct as provided in section 40-47-110).  The Department's and the Board's future enforcement of the Act against ophthalmologists using the Technology affects Opternative.  Also, the fact that the Department and the Board have not taken any action against Opternative or to enforce the Act does not affect Opternative's standing.  Opternative seeks declaratory judgment of the Act's validity, and a party does not have to first violate a statute to challenge its validity.  *See Joseph*, 417 S.C. at 450, 790 S.C. at 770 ("The Declaratory Judgment Act should be liberally construed to accomplish its intended purpose of affording a speedy and inexpensive method of deciding legal disputes and of settling legal rights and relationships, without awaiting a violation of the rights or a disturbance of the relationships." (quoting *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 16, 567 S.E.2d 881, 888–89 (Ct. App. 2002))).  Finally, because Opternative provides a service to the public and ophthalmologists, the Department's and the Board's lack of regulatory authority over Opternative is irrelevant.  *See Quality Towing, Inc. v. City of Myrtle Beach*, 340 S.C. 29, 34, 530 S.E.2d 369, 371 (2000) ("[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." (alteration in original) (quoting *Craig v. Boren*, 429 U.S. 190, 195, (1976))).

Accordingly, we hold the trial court erred in finding there was no causal connection between Opternative's injury and the Act.

## III.    Redressability

Opternative argues the trial court erred in finding a lack of redressability.  We agree.

To satisfy the third element of standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Hoyler v. State*, 428 S.C. 279, 305, 833 S.E.2d 845, 859 (Ct. App. 2019) (quoting *Sea Pines*, 354 S.C. at 601, 550 S.E.2d at 291).  When summary judgment would be appropriate under Rule 56, the nonmoving party cannot solely rely on allegations or denials asserted in his pleadings but must respond, such as through an affidavit, and show there is a genuine issue of fact for trial.  Rule 56(e).  "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  *Id.*

The trial court erred in finding Opternative failed to show a favorable decision would redress its injury.  The trial court referred only to Opternative's complaint when discussing redressability and did not address Bodde's affidavit.  In his affidavit, Bodde stated that based on his personal knowledge and experience, Opternative was in contact with ophthalmologists who indicated they would resume use of the Technology if the Act was struck down.  *See* Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge . . . .").  When viewed in the light most favorable to Opternative, this is evidence that a favorable decision would redress Opternative's injury.  *See Hancock*, 381 S.C. at 329–30, 673 S.E.2d at 802 (stating all the evidence and all inferences therefrom are viewed in the light most favorable to the nonmoving party). Accordingly, we reverse this finding.

## CONCLUSION

Based on the foregoing, we hold the trial court erred in finding Opternative lacked standing, and we reverse.  Because the trial court ruled only on the issue of standing and did not rule on the merits of Opternative's constitutional challenge to the Act, we decline to address the merits on appeal.  Therefore, we remand this case for further consideration.

Accordingly, the trial court's order is

**REVERSED AND REMANDED.**

**HUFF and GEATHERS, JJ., concur.**